United States Court of Appeals,

Fifth Circuit.

No. 94-60619.

Robert W. BROOKS, Plaintiff-Appellee Cross-Appellant

v.

GEORGE COUNTY, MISSISSIPPI, et al., Defendants,

George County, Mississippi, et al., Defendant-Appellants Cross-Appellee,

Wilbur Ward and Earl Koskela, Defendants Cross-Appellees.

May 16, 1996.

Appeals from the United States District Court for the Southern District of Mississippi.

Before REYNALDO G. GARZA, JOLLY and DUHÉ, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

Today we have entered an order denying the Appellants' Petition for Rehearing in the above case. However, we withdraw our prior opinion on this matter, found at 77 F.3d 834, and substitute the following opinion.

Background

Robert W. Brooks successfully brought claims under the Thirteenth and Fourteenth Amendments of the United States Constitution for his continued incarceration in a county jail eight months after the charges against him had been dropped. Eugene Howell, Sheriff of George County, Mississippi ("Sheriff Howell" or "the Sheriff"), arrested Robert W. Brooks ("Brooks") in Virginia, where Brooks, who was out on bond, had fled after indictments were returned against him for grand larceny and felony burglary in Mississippi. Brooks was incarcerated in the George County jail on January 21, 1991, and was arraigned on the indictments on January 28, 1991.

On or about the same day, Gary Evans, assistant district attorney for the Nineteenth Judicial Circuit, requested that the charges against Brooks be dismissed pursuant to a nolle prosequi order. An order granting the district attorney's motion was signed on February 4, 1991, in Jackson County, Mississippi, by Judge Clinton E. Lockard. On February 5, 1992, the district attorney's office filed a

copy of the order at the George County Circuit Clerk's office. The order was filed the same date by an employee of the circuit clerk of George County. Evans apparently informed Brooks's attorney, William T. Bailey, of the state's intention to seek dismissal prior to making the motion. However, neither the Sheriff's office nor Brooks was notified of the dismissal. Brooks was not released until he discovered and showed the order to Sheriff Howell on October 1, 1991.

In March 1991, during the time period in which he was confined in the George County jail, Brooks requested and was granted trusty status. Brooks specifically asked that he be made trusty. As a trusty, Brooks was not locked down in his cell, but was, instead, allowed the freedom to roam in and out of his cell, Sheriff Howell's office, the jail and the surrounding grounds area.

While incarcerated, Brooks performed, at his own request, various services for Sheriff Howell, George County and others, including several charitable and benevolent organizations. Brooks performed these services on public property as well as private property.[1] Brooks performed these services for two reasons: (1) he was able to secure his release from jail during the day and (2) Brooks earned extra money by working on the outside. Brooks was not compensated for those services he performed on public property, but on several occasions, was paid money or received goods in exchange for the services he rendered on private property.

Brooks brought an action in the Southern District of Mississippi, Southern Division, on July 1, 1992, against Sheriff Howell and a number of deputy sheriffs of George County; members of the board of supervisors of George County; Earl Koskela, district attorney for the Nineteenth Judicial District; Public Defender William T. Bailey; Wilbur G. Ward, circuit clerk of George County; and other public officials in their official and individual capacities, as well as George County, pursuant to 42 U.S.C. § 1983.[2] Brooks's claims were premised upon alleged violations of the First, Fourth, Fifth, Sixth, Eighth, Thirteenth, and Fourteenth Amendments as a result of his incarceration after the nolle prosequi order had been entered in February, 1991. Brooks claimed that he was unlawfully and

---

[1]Examples of work done on private property include construction of a dog pen for Deputy Sheriff Miller and installation of a fence for Sheriff Howell's sideline fencing business.

[2]Brooks also raised a number of state law claims that were dismissed without prejudice on summary judgment.

falsely incarcerated during this period of time. He also alleged that, while incarcerated, he was forced or coerced into working on public and private property, amounting to involuntary servitude under the Thirteenth Amendment. Because he was not always paid for his services, he also claimed a violation of his due process rights under the Fourteenth Amendment.

On motions for summary judgment, the district court dismissed Brooks's claims of unlawful incarceration arising from the entry of the nolle prosequi order as to all parties. The district court also held that neither the district attorney nor the clerk were subject to any of Brooks's claims for damages. The remaining parties moved in limine to exclude certain evidence from the trial, notably evidence of Brooks's status after the entry of the nolle prosequi order. The district court denied the motion. After a five-day trial, the jury returned a verdict for Brooks against Sheriff Howell, James Cooper and George Miller, deputy sheriffs of George County, and George County (collectively, the "Appellants"), awarding compensatory damages in the amount of $70,000, $50,000 of which represented damages concerning Brooks's claim of involuntary servitude under the Thirteenth Amendment and $20,000 representing lost wages in connection with Brooks's due process claims under the Fourteenth Amendment. In a bifurcated proceeding, the jury awarded punitive damages against Sheriff Howell and Deputy Miller in their individual capacities in the amount of $5,000 and $500, respectively.

Appellants filed a timely notice of appeal on September 6, 1994. Brooks filed a cross-appeal with respect to the district court's granting of partial summary judgment on his claims of unlawful incarceration and dismissal of all claims against the district attorney and the clerk. We affirm in part and reverse in part the judgment for Brooks in the manner hereinafter described.

Discussion

Brooks prevailed on his claims under the Thirteenth and Fourteenth Amendments with regard to his work as a trusty while in the George County jail. Appellants argue that these claims should not have gone before the jury. We will discuss in turn the merits of each of these constitutional claims as well as the unlawful incarceration claims Brooks lost on summary judgment and dismissal from the suit of the district attorney and the clerk.

A. Claims Based on Work as a Trusty

1. Thirteenth Amendment—Involuntary Servitude Claim

Brooks alleged that his choice between staying in jail or working when he was not supposed to be in jail amounted to involuntary servitude. We begin by asking whether the record contained substantial evidence to create a jury question on involuntary servitude. *Boeing v. Shipman,* 411 F.2d 365, 375 (5th Cir.1969).

The Thirteenth Amendment to the Constitution provides that "[n]either slavery nor involuntary servitude, except as punishment for a crime whereof the party shall have been duly convicted, shall exist within the United States or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. The Fifth Circuit defines involuntary servitude as "an action by the master causing the servant to have, or to believe he has, no way to avoid continued service or confinement." *Watson v. Graves,* 909 F.2d 1549, 1552 (5th Cir.1990). "When the employee has a choice, even though it is a painful one, there is no involuntary servitude ... A showing of compulsion is thus a prerequisite to proof of involuntary servitude." *Id.*

In *Watson,* this Circuit held that two inmates who requested to work outside of jail made such a choice voluntarily and presented no Thirteenth Amendment claim. *Id.* at 1552-1553. The prison context made this choice no less voluntary. Examining the record, we find Brooks's situation to be similar to that of the inmates in *Watson.*

The county held Brooks as a pretrial detainee. In that status, Brooks was entitled only to be confined until trial; the Appellants were under no obligation to allow Brooks the freedom he enjoyed. Brooks made the request for trusty status. He desired to leave the jail and chose to work as the price for that right. Since Brooks was not being punished by being detained until trial, the choice between this confinement and work as a trusty cannot be considered coercive because the benefits he received for working were not benefits for which he was otherwise entitled. Admittedly, the choice described might have been a painful one, but it was nonetheless a choice.

The district court granted Appellants partial summary judgment on Brooks's claims relating to unlawful incarceration, absolving Appellants of legal liability. To find the Appellants liable for

involuntary servitude based on a nolle prosequi order which provides no basis for liability under unlawful incarceration would defy common sense. Like the inmates in *Watson,* Brooks had a choice, albeit a painful one. He was, however, not subject to *involuntary* servitude and thus presented no claim under the Thirteenth Amendment.[3]

2. Fourteenth Amendment—Procedural Due Process Claim

Brooks claimed that Appellants' failure to compensate him for any of his work on public property, and their failure to compensate him for part of his work on private property, constituted a deprivation of property without due process of law in violation of the Fourteenth Amendment.[4] The jury found Sheriff Howell and Deputy Miller liable for the deprivations in their individual capacities; because the jury found the deprivations to be part of a policy or custom, Sheriff Howell and Deputy Miller were also liable in their official capacities.[5]

Appellants raise a number of defenses. They contend that Brooks has not alleged the deprivation of a cognizable property right, that qualified immunity shields Sheriff Howell and Deputy Miller from liability in their individual capacities and that no custom was present to give rise to official liability under *Monell.* Appellants also maintain that post-deprivation remedies are adequate process for Brooks because whatever deprivation that allegedly occurred was merely a random and unauthorized act under the *Parratt/Hudson* doctrine. Consideration of these defenses leads us to affirm judgment on the Fourteenth Amendment claim only as to Sheriff Howell in both his individual and official capacities.

---

[3]Because we hold that Brooks presented no claim for involuntary servitude, we do not address whether Appellants were qualifiedly immune from liability in their individual capacities or whether Appellants were liable in their official capacities under the Thirteenth Amendment. We also do not address whether admission of evidence of Brooks's unlawful incarceration was proper.

[4]Appellants argue that Brooks never properly made a procedural due process claim for deprivation of wages under the Fourteenth Amendment. However, Brooks's amended complaint requested relief under the Fourteenth Amendment and later stated that Sheriff Howell and his deputies "caused the Plaintiff to suffer ... damages for economic losses in the form of loss of wages ... for which the Plaintiff is entitled to recover." Not surprisingly, the lower court recognized this contention as a due process claim for deprivation of wages. Such recognition was proper.

[5]The District Court amended its final judgment to include George County as result of the finding of official capacity liability.

a. Brooks's Property Right

Since the United States Constitution does not create property rights, Brooks must be able to rely on Mississippi law to prove that he has a cognizable property right in wages for work performed as a pretrial detainee. *Garcia v. Reeves County, Texas,* 32 F.3d 200, 203 (5th Cir.1994). Where there is a "legitimate expectation of entitlement," there is a property right. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

Brooks contended below that Miss.Code Ann. §§ 47-1-13 and 47-1-21 (1972) created a property right in wages for work on public and private property as a pretrial detainee. Miss.Code Ann. § 47-1-13 states in relevant part that

> Any person being held in the county jail in default of bail to await trial ... may on application to the sheriff of the county, be allowed to work on ... county public works *as other convicts are worked and at the same wage.* The board of supervisors shall settle with prisoners so working at their regular meetings monthly.

(emphasis added). Miss.Code Ann. § 47-1-21 requires that

> [t]he sheriff of each county shall keep a well bound alphabetical jail docket. In it he shall promptly enter under the proper initial the name, age, color and sex of each convict, the date of his or her commitment, each day worked on the county farm....

> The sheriff shall submit his docket to the board of supervisors at each of their regular meetings, and the same shall be examined carefully by the president of the board, and by any other members who desire to examine the same, in the presence of the board while in session.

The statutes cited by Brooks do not create a legitimate expectation of entitlement to compensation for work on private property by pretrial detainees. These statutes do not provide for payments for work on *private* property. In fact, under Mississippi law, prisoners may only do work of an "exclusively public character." *See* Miss.Code Ann. §§ 47-1-19, 47-1-3. We therefore find that Brooks's failure to receive compensation for his work on private property over and above the compensation he actually received does not constitute a deprivation of a cognizable property right.

The two provisions quoted above, in our estimation, do create a legitimate expectation of entitlement to compensation for work on public property by pretrial detainees. These two statutes provide that a pretrial detainee who is permitted to work on public property must be paid the same wages as other prisoners. They place on the sheriff the duty to keep a record of days worked and to submit that information to the county board of supervisors so that the board can "settle" with the

pretrial detainees at its regular meetings. Our conclusion that these statutes create a cognizable property right in wages is buttressed by the fact that the state has provided a mechanism whereby claims against the county can be presented directly to the board of supervisors or in state court.[6] Because Mississippi law creates a cognizable property right in wages for a pretrial detainee's work on public property, Brooks cannot be deprived of that right without due process of law. *See Piatt v. MacDougall,* 773 F.2d 1032, 1036 (9th Cir.1985) (en banc) ("Because Arizona has established, by statute, a right of inmates to compensation for work performed for private parties, it cannot deny [the inmate] that right after he has earned the wages, without affording him due process of the law.").

Sheriff Howell did not keep a record of the days Brooks worked on public property and failed to present such a record to the board of supervisors at its meetings, precluding the board of supervisors from paying wages to Brooks. Brooks was thus deprived of wages for the work he performed on public property as a direct consequence of Sheriff Howell's failure to act in the face of a clear duty to act under state law. The statutes cited by Brooks, however, do not impose on Deputy Miller a similar duty. Because the record provides no evidence that Deputy Miller's actions or failure to act deprived Brooks of wages for the work he performed on public property, we reverse the judgment holding Deputy Miller liable in his individual or official capacities on this claim.[7]

b. Sheriff Howell's Qualified Immunity

We now consider whether Sheriff Howell is qualifiedly immune from liability in his individual capacity. Qualified immunity is only available when an official acts "within the scope of [his or her] discretionary authority." *Cronen v. Texas Dept. of Human Services,* 977 F.2d 934, 939 (5th Cir.1992). Mississippi law, as quoted above, imposes on Sheriff Howell a non-discretionary duty to

---

[6]Under Miss.Code Ann. §§ 19-13-27 and 19-13-29, a claimant against a county can present such claim for unpaid work to the county board of supervisors. "If the board shall reject any such claim in whole or in part, or refuse when requested at a proper time, to pass thereon, the claimant may appeal to the Circuit Court, or may bring suit against the county on any such claim." Miss.Code.Ann. § 19-13-31.

[7]Appellants would have us release Deputy Sheriff James Cooper from liability on the Fourteenth Amendment claim. As is visible from the Special Interrogatories, the jury never found Cooper liable on the Fourteenth Amendment claim. We note that Cooper would be free of liability anyway for the same reasons that absolve Deputy Miller.

keep records of work performed by pretrial detainees and to transmit those records to the board of supervisors so that pretrial detainees can be paid. Sheriff Howell thus is not entitled to qualified immunity from individual liability on this due process claim.

c. Official Capacity Liability Under *Monell*

Brooks's suit against Sheriff Howell in his official capacity is treated as a claim against George County. *Hafer v. Melo,* 502 U.S. 21, 23-27, 112 S.Ct. 358, 361-362, 116 L.Ed.2d 301 (1992). To establish liability on the part of George County, Brooks must demonstrate a policy or custom which caused the alleged constitutional deprivation. *Monell v. New York City Dept. of Soc. Serv.,* 436 U.S. 658, 690-91, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Appellants contend no such policy is present. However, the jury found that the Fourteenth Amendment violations were part of a custom, policy or practice of the county. This finding has sufficient support in law and fact.

We note that even "a single decision may create municipal liability *if* that decision were made by a final policymaker responsible for that activity." *Brown v. Bryan County, Oklahoma,* 67 F.3d 1174, 1183 (5th Cir.1995) (emphasis in original). Sheriffs in Mississippi are final policymakers with respect to all law enforcement decisions made within their counties. *Huddleston v. Shirley,* 787 F.Supp. 109, 112 (N.D.Miss.1992); Miss.Code Ann. § 19-25-1, *et seq.* Sheriff Howell admitted on the record that the department kept none of the required records detailing the locations and number of days prisoners worked. The jury could infer from this statement that the county had a policy of not keeping such records. Therefore, George County is liable for the ongoing actions of its policy maker, Sheriff Howell, in depriving Brooks of his property without due process. *Turner v. Upton County,* 915 F.2d 133, 137 (5th Cir.1990), *cert. denied* 498 U.S. 1069, 111 S.Ct. 788, 112 L.Ed.2d 850 (1991).

d. Application of the *Parratt/Hudson* Doctrine

Appellants urge in their defense that no due process violation has been shown because of the *Parratt/Hudson* doctrine. Under their version of this doctrine, the mere presence of post-deprivation remedies prevents a due process claim.[8] Such interpretation is blatantly misleading and is not the law.

---

[8]*See* footnote 6 *supra* (submission of claims against counties).

The *Parratt/Hudson* doctrine dictates that a state actor's *random and unauthorized deprivation* of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy. *Caine v. Hardy,* 943 F.2d 1406, 1412 (5th Cir.1991) (en banc) (discussing *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) and *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)).

The *Parratt/Hudson* doctrine is inapplicable to the facts as shown. The doctrine is meant to protect the state from liability for failing to provide predeprivation process in situations where it cannot anticipate the need for such process (when actions are random and unauthorized). *Zinermon v. Burch,* 494 U.S. 113, 128-32, 110 S.Ct. 975, 984-87, 108 L.Ed.2d 100 (1990). Where a municipal officer operates *pursuant to a local custom or procedure,* the *Parratt/Hudson* doctrine is inapposite: actions in accordance with an "official policy" under *Monell* can hardly be labeled "random and unauthorized." *Wilson v. Civil Town of Clayton, Ind.,* 839 F.2d 375, 380 (7th Cir.1988). As this Court noted, where employees are acting in accord with customary procedures, the "random and unauthorized" element required for the application of the *Parratt/Hudson* doctrine is simply not met. *Alexander v. Ieyoub,* 62 F.3d 709, 713 (5th Cir.1995). Despite Appellants' urging, we see no application of the *Parratt/Hudson* doctrine to the facts as presented.

Accordingly, we affirm the judgment holding Sheriff Howell liable in his individual and official capacities on this Fourteenth Amendment claim relating to Brooks's work on public property. We do, however, remand to the district court for a retrial to determine the actual damages and punitive damages, if any, arising from Sheriff Howell's liability on this claim.[9]

---

[9]Appellants have raised an important evidentiary concern which we must address. The district court denied Appellants' motion in limine to exclude evidence of the mistaken nature of Brooks's confinement. The record is replete with Brooks's references to the order of dismissal and subsequent mistaken confinement for several months. The mistaken nature of the confinement was only relevant to Brooks's unlawful incarceration claim for which the court granted summary judgment for the Appellants. The mistaken nature of the confinement is of little or no relevance to Brooks's surviving Fourteenth Amendment claim for deprivation of property and is likely prejudicial to the defendants. The lower court should thus allow no evidence (including the nolle prosequi order itself) of the *mistaken* nature of the confinement to go before the jury in their consideration of damages on the Fourteenth Amendment claim. With regard to Brooks's status, the jury is entitled only to know that Brooks was in the county jail as a pretrial detainee and that he was released when the charges against him were dismissed.

B. Fourth Amendment Claims—Unlawful Seizure

Brooks cross-appeals the summary judgments against him on his claims based on unlawful confinement under the Fourth Amendment.[10] All defendants were sued in both official and individual capacities under 42 U.S.C. § 1983. We review de novo the district court's decision to grant summary judgment in favor of Appellants. For the reasons discussed below, we affirm the grant of summary judgment against Brooks.

Brooks argues that his continued incarceration after the nolle prosequi order was a violation of the Fourth Amendment. The court granted summary judgment in favor of all Cross-Appellees.[11] As the lower court noted, Fourth Amendment claims are appropriate when the complaint contests the method or basis of the arrest and seizure of a person. Yet Brooks did not challenge his arrest, which was made pursuant to a valid capias, as a violation of the Fourth Amendment, but challenged only his continued incarceration.

We reference our decision in *Valencia v. Wiggins,* 981 F.2d 1440, 1449 (5th Cir.), *cert. denied* 509 U.S. 905, 113 S.Ct. 2998, 125 L.Ed.2d 691 (1993), by analogy, for the proposition that once the incidents of a valid arrest have long since been completed and the pretrial detainee remains in detention, the Fourth Amendment no longer applies when the challenge is solely to continued incarceration. In *Valencia,* this Circuit held that neither the Unreasonable Search and Seizure Clause of the Fourth Amendment nor the Cruel and Unusual Punishment Clause of the Eighth Amendment is applicable in determining whether a detention official's use of deliberate force was excessive. *Id.* The Due Process Clause of the Fifth and Fourteenth Amendments are the appropriate constitutional

---

[10]Brooks appeals the summary judgment for all Cross-Appellees on the Fourth Amendment claims. Brooks does not appeal the summary judgment against him on his Eighth Amendment claim or on any of his claims against Public Defender William T. Bailey. Additionally, we note that Brooks nowhere in his brief questions the partial grant of summary judgment for the George County Board of Supervisors on immunity grounds, or for the Sheriff or his deputies on the Fourteenth Amendment claim with regard to deprivation of *liberty.* Accordingly, we will not address those portions of the summary judgment, any argument as to their propriety having been waived by Brooks.

[11]Cross-Appellees on the Fourth Amendment claim are George County, Sheriff Howell, his three deputies, the George County Board of Supervisors, District Attorney Earl Koskela and Circuit Clerk Wilbur G. Ward.

provisions for this determination. *Id.*

As the Court stated,

We do not believe that the Fourth Amendment provides an appropriate constitutional basis for protecting against deliberate official uses of force occurring, as in this case, *after* the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody and *after* the plaintiff has been in detention awaiting trial for a significant period of time ...  As the Fourth Amendment protects against unreasonable "seizures," it seems primarily directed to the *initial* act of restraining an individual's liberty, such as an investigatory stop or arrest.

*Id.* at 1443-1444.

The logic of *Valencia* applies to the instant case.  The Fourth Amendment is inapplicable to a pretrial detainee who was properly arrested and is awaiting trial.  That detainee has recourse to due process protections, not protection against unreasonable seizures after a lawful seizure has occurred.  Since Brooks has shown no defect in his actual arrest, he has made no claim under the Fourth Amendment.[12]  We affirm the summary judgment for the Cross-Appellees on Brooks's Fourth Amendment claims.[13]

C. Dismissal of Claims Against the D.A. and the Clerk

Brooks also challenges the lower court's holding that District Attorney Koskela and Circuit Clerk Ward were not subject to suit on any of the constitutional claims discussed above.[14]  As with the Fourth Amendment claim above, we hold that the district court properly granted summary

---

[12]Brooks's brief does not address his arrest but we do so here to show the lack of basis for Brooks's Fourth Amendment claim.  Brooks was arrested in Virginia pursuant to a notice placed with the National Criminal Information Center (NCIC) after an affidavit was presented against him for grand larceny.  Brooks waived extradition and was returned to Mississippi by Sheriff Howell on January 21, 1991.  He was served with the capias for indictments issued in October, 1990 for cause numbers 3657 and 3658.  He appeared before the judge for his initial appearance on these charges on January 28, 1991 and pled not guilty.  NCIC printouts provide a reliable basis for probable cause to arrest. *U.S. v. McDonald,* 606 F.2d 552, 552-54 (5th Cir.1979).  Therefore, there is no support for Brooks's claim that his arrest violated the Fourth Amendment guarantees against unreasonable searches and seizures.

[13]As we agree with the District Court that Brooks presented no Fourth Amendment claim, we do not reach the arguments on immunity and level of conduct advanced at length by Cross-Appellees on this claim.

[14]This immunity analysis applies to Koskela's and Ward's potential liability under any of Brooks's claims.  Because we have already shown above that Brooks's claims under the Fourth and Thirteenth Amendments were without merit, however, this immunity analysis is germane only to Brooks's claim under the Fourteenth Amendment for deprivation of liberty.

judgment.

1. The District Attorney

Brooks's claims against Earl Koskela, the George County District Attorney, stem from Koskela's failure to provide a copy of the nolle prosequi motion to opposing counsel. Mississippi Uniform Circuit Court Rule 2.01 (1994) required that "[a] copy of all subsequent pleadings and motions, including motions for a new trial, shall be delivered in person or by mail to opposing counsel ..."[15] Brooks contends that the district attorney's office, through Gary S. Evans, assistant district attorney, violated this rule, leading to his unconstitutional imprisonment for eight months. At the summary judgment phase, the district court dismissed all claims against Koskela in his individual capacity on the basis of prosecutorial immunity and in his official capacity under the Eleventh Amendment on the basis of his status as a state official in Mississippi. We find summary judgment appropriate in this context.

This Court is uncertain whether Brooks has even alleged a violation of Rule 2.01. Mr. Evans merely prepared an order of dismissal for the state trial court after acknowledging in open court that the case would not proceed. The district attorney's office had no duty under Rule 2.01 or, as far as we can discern, under any Mississippi law, to provide copies of the *court's* orders to opposing counsel.

Even if one assumed that the procedure resulting in a court order amounted to a "motion," Mr. Evans provided notice on or about January 28 or 29, 1991, of the government's intention to seek dismissal to Mr. Brooks's attorney, William T. Bailey, prior to the open court procedure.[16] Thus we

---

[15]This rule has been amended and recodified as Uniform Circuit and County Court Rule 2.06, Service of Copies and Certificate of Service.

[16]Mr. Bailey claimed that he no longer represented Brooks at the time of the nolle prosequi order. However, we agree with the district court that Bailey was still Brooks's attorney for the purposes of establishing notice of the order. Bailey, assigned to represent indigent defendants such as Brooks, never received court permission to withdraw from representation of Brooks as required under Rule 1.05 of the Uniform Criminal Rules of Circuit Court Practice (1994). Bailey signed a document acknowledging receipt of discovery from the State on behalf of Brooks. Brooks himself advised the court at the arraignment on January 28, 1991 that he had an attorney. At roughly the same time, the government gave its notice to Bailey that the case would not proceed. It is not surprising that all involved except for Bailey himself believed that Bailey was Brooks's lawyer. Thus, the district court properly concluded that "Bailey, in his capacity as public

are not convinced that if the nolle prosequi procedure was subject to Rule 2.01's requirements that the district attorney's office even violated the rule.

Assuming *arguendo* that the district attorney violated Rule 2.01, we agree with the lower court that Koskela was nonetheless immune from such suit in his official and individual capacities. The district attorney is considered a state official in Mississippi, as the office is primarily state-funded, and the district attorney has the power to represent the state in all judicial proceedings. *Chrissy F. by Medley v. Mississippi Dep't of Public Welfare,* 925 F.2d 844, 849 (5th Cir.1991). As a state actor, the district attorney is shielded in his official capacity by Eleventh Amendment immunity. *Id.* No suit against Koskela in his official capacity can be maintained.

Koskela is also immune from suit in his individual capacity. Immunity is sustained for acts taken in furtherance of the prosecution of the case; acts which are investigative or administrative do not carry absolute immunity. *Imbler v. Pachtman,* 424 U.S. 409, 430, 96 S.Ct. 984, 994-95, 47 L.Ed.2d 128 (1976). Immunity is gauged by the functional activities the prosecutor engaged in and not the status of the defendant. *Briscoe v. LaHue,* 460 U.S. 325, 342, 103 S.Ct. 1108, 1119, 75 L.Ed.2d 96 (1983). Actions which are related to the judicial process fulfill the prosecutor's "advocatory" function and are considered absolutely immune from suit. *See Marrero v. City of Hialeah,* 625 F.2d 499, 505 (5th Cir.1980), *cert. denied* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981).

In our estimation, the prosecutor's acts through his assistant of requesting that the court enter an order of nolle prosequi of Brooks's criminal charges, of having an order prepared for the court that memorialized the same, and the forwarding of such order to the clerk for filing are all prosecutorial activities "intimately associated with the *judicial* phase of the criminal process." *Imbler,* 424 U.S. at 430, 96 S.Ct. at 995 (emphasis added). The mere fact that the district attorney's office prepared the court's order for it and forwarded the order does not remove these acts from being intimately associated with the judicial process. Accordingly, we affirm the District Court's holding that Mr. Koskela is immune from suit under 42 U.S.C. § 1983 in both official and individual capacities on all

defender, was acting as Brooks's attorney for the duration of the case."

claims brought by Mr. Brooks.[17]

2. The Circuit Clerk of George County

Wilbur G. Ward was the Circuit Clerk for George County at the time of the incidents which are the subject of this lawsuit. The record indicates that the order of nolle prosequi was filed by Angela Cooper, over the file stamp which indicated that Wilbur Ward was the Circuit Clerk. Brooks alleges that Ward created a policy which had the effect of depriving him of the right to be free from unnecessary restraint by failing to send court orders of dismissal of charges to the defendant in a criminal prosecution, or to his counsel, and failing to adopt a policy for the George County Clerk's office of sending orders. The district court granted summary judgment in favor of Wilbur G. Ward, circuit clerk of George County, Mississippi ("the clerk"), based on the fact that the judge, not the clerk, was the final policymaker of the circuit county system in George County with regard to the acts alleged by Brooks. We agree.

Under Mississippi law, the judge is the ultimate authority for the supervision of the court in his jurisdiction. As the Mississippi Supreme Court stated, "Although the clerk performs the physical act of record keeping, the judge is ultimately responsible for the administration of his court." *In re Collins,* 524 So.2d 553, 555 (Miss.1987). Only those officials who have "final policymaking authority" may by their actions subject the government to liability under 42 U.S.C. § 1983. *Bryan Cty.,* 67 F.3d at 1182. Accordingly, Ward cannot be liable for failing to establish a policy of sending orders to parties in a criminal proceeding because he was not the policymaker for the George County Circuit Court System.[18]

We also note that nowhere has Brooks shown that circuit clerks have an affirmative duty

---

[17]Holding that the district attorney is protected by absolute immunity in both official and individual capacities, we do not reach the issue of Cross-Appellees' qualified immunity.

[18]Brooks makes much of the fact that Ward held the position of Circuit Court Administrator of George County. The Court Administrator performs nonjudicial tasks of the court, serves as a liaison to the general public, and provides administrative support for all judges of the district. Miss.Code Ann. § 9-17-3 (1972). We find Brooks's reference to this fact deceptive. Appellants astutely advert to the fact Ward did not become Administrator until July, 1992, almost ten months *after* Brooks was released from jail. Ward's appointment to this position after Brooks's release is hardly relevant to the question of whether Ward was the court's policy maker at the time of Brooks's incarceration.

under Mississippi law to provide the sheriffs of the state, or counsel for criminal defendants, or criminal defendants pro se, with copies of orders or pleadings filed in criminal cases. Nor has Brooks shown an affirmative duty to notify sheriffs, counsel or defendants of the filing and entry of orders and pleadings in criminal cases. The circuit clerks merely have a duty to file and docket all papers filed in each court case.[19]

Since "no duty to act existed, the failure to act did not violate the constitution." *Salas v. Carpenter,* 980 F.2d 299, 307 (5th Cir.1992).[20] While it is unfortunate that Brooks languished in the county jail, we can find no duty violated by the clerk to impose liability for the loss. The district court properly granted summary judgment on this issue.

## Conclusion

*Libertas inestimabilis res est.* The spirit of this adage is that one can place no price on freedom. Brooks fell through the cracks of a modern bureaucratic labyrinth, resulting in eight months of mistaken confinement. Nevertheless, we are unable to provide a remedy under 42 U.S.C. § 1983 to Brooks for this mistaken confinement. Brooks is entitled to a remedy, however, for the deprivation of his property—the wages earned as a pretrial detainee on public property—without due process of law. Nothing will shield Sheriff Howell or George County from liability for Sheriff Howell's failure to keep, and submit to the board of supervisors for payment, records of Brooks's work on public property as a pretrial detainee.

Holding that Brooks's involuntary servitude claim is without merit under the Thirteenth Amendment, we VACATE the judgments of the court below and RENDER judgment for Appellants. We also VACATE the judgment of the court below and RENDER judgment for Deputy Miller in both his individual and official capacities on Brooks's Fourteenth Amendment deprivation of property claim. We AFFIRM the judgment holding Sheriff Howell liable in his individual and official capacities

---

[19]*E.g.,* Miss.Code Ann. § 9-7-171 (1972) (duty of circuit clerk to keep a "general docket"); Miss.Code Ann. § 9-7-175 (1972) (duty to keep a "criminal docket"); Miss.Code Ann. § 9-7-177 (1972) (duty to keep an "appearance docket").

[20]Because we hold that the circuit clerk was not a policymaker and did not violate any duty, we do not reach the issue of the clerk's qualified immunity.

under the Fourteenth Amendment for deprivation of property solely as it relates to Brooks's claim for wages for work on *public* property. However, we REMAND to the district court for a retrial to determine the actual damages, and punitive damages, if any, arising from Sheriff Howell's liability for depriving Brooks of wages for his work on *public* property. We also AFFIRM the district court's summary judgment for all Cross-Appellees on Brooks's constitutional claims regarding unlawful incarceration and for District Attorney Koskela and Circuit Clerk Ward on the dismissal of all claims against them.