United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 28, 2005**

Charles R. Fulbruge III
Clerk

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 04-30714

KAREN ROBINSON WOODARD,

Plaintiff-Appellant,

versus

JAMES ANDRUS, in his capacity as Clerk of Court
in and for the 14th Judicial District Court, Parish of
Calcasieu, State of Louisiana

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Louisiana

Before DAVIS, STEWART and DENNIS, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Karen Woodard filed suit against James Andrus, in his capacity as Clerk of Court in and for

the 14th Judicial District Court in Calcasieu Parish, for violations of 42 U.S.C. §1983.  Woodward

asserts that Andrus charged her, and others similarly situated, fees in excess of, or not authorized by

state statute.  As a result, she urges that her constitutional rights to due process, equal protection,

and access to courts were violated.  Andrus filed a motion to dismiss for failure to state a claim. The

district court granted Andrus' motion and dismissed Woodard's claims without prejudice.  We affirm

in part and reverse in part.

## I

Woodard was a civil litigant in a child custody proceeding in the 14th Judicial District Court. During the course of that litigation, Andrus charged Woodard fees that were paid from funds she deposited in the state court in advance. Andrus' authority as Clerk of Court to impose such fees is derived from LA. REV. STAT. 13:841. Section 841(A) provides that: "[t]he clerks of the several district courts shall be entitled to demand and receive the following fees of office and no more in civil matters: . . ." The statute then goes on to delineate 77 services and the fee for each one. The statute also avers that: "[i]n addition to the fees provided in Subsection A of this Section, the clerks of the several district courts may demand and receive additional fees in an amount not to exceed ten percent of the fees specified in Subsection A of this Section." LA. REV. STAT. 13:841(D).

Woodard alleges that Andrus deprived her of her constitutional rights by charging her fees not authorized by LA. REV. STAT. 13:841 and charging her fees in excess of those authorized by LA. REV. STAT. 13:841. For example, Woodard contends that Andrus charged litigants $10.00 to file a subpoena *duces tecum* when § 841 enumerates a fee of $3.30. She also cites a $5.00 "Women's Shelter" fee Andrus charged litigants even though she argues such fees were declared unlawful by the Louisiana Supreme Court in Safety Net for Abused Persons v. Segura, 692 So.2d 1038 (La. 1997).

Woodard filed a motion to certify a class action, arguing that Andrus was continuing to impose fees on litigants in derogation of the statutorily mandated fee schedule contained in § 841. Woodard's motion was stayed by the district court. Andrus then filed a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The district court granted Andrus' motion to dismiss. As to Woodard's due process claim, the district court agreed that Andrus exceeded his authority by charging fees not authorized by § 841.

2

However, the district court, relying on <u>Hudson v. Palmer</u>,[1] held that "an unauthorized, intentional deprivation of property by a governmental official does not constitute a violation of the Due Process Clause of the 14th Amendment if a meaningful post-deprivation remedy for the loss is available." The district court stated that Woodard failed to utilize an available post-deprivation remedy to force Andrus' compliance with § 841 by filing a writ of mandamus. Therefore, the district court held that Woodard did not show the requisite state action necessary to state a claim for a due process violation. As to Woodard's access to courts claim, the district court held that she failed to state a claim upon which relief could be granted because she did not contend that her ability to sue had been either blocked or delayed by Andrus. Finally, the district court dismissed Woodard's equal protection claim because she did not allege that Andrus selectively enforced § 841 based upon any impermissible ground. Woodard filed a timely notice of appeal.

II

Dismissals under Rule 12(b)(6) are reviewed *de novo*. <u>Hamilton v. United Healthcare of Louisiana, Inc.</u>,310 F.3d 385, 388 (5th Cir. 2002). In doing so, well-pleaded factual allegations in the complaint are accepted as true. <u>Herrmann Holdings Ltd. v. Lucent Technologies Inc.</u>, 302 F.3d 552, 557 (5th Cir. 2002) (quotations and citations omitted). The complaint must be liberally construed, with all reasonable inferences drawn in the light most favorable to the plaintiff. <u>Sloan v. Sharp</u>, 157 F.3d 980, 982 (5th Cir. 1998). The dismissal will be upheld only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Lowrey v. Texas A & M Univ. Sys.</u>, 117 F.3d 242, 247 (5th Cir. 1997) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).

---

[1] 468 U.S. 517 (1984).

III

The district court dismissed Woodard's due process claim based upon the doctrine articulated in Hudson v. Palmer, *supra*. The Parratt/Hudson doctrine, as it is known, dictates that a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy. Caine v. Hardy, 943 F.2d 1406, 1412 (5th Cir. 1991) (en banc) (discussing Parratt v. Taylor, 451 U.S. 527, 542-44 (1981) and Hudson v. Palmer, 468 U.S. 517, 530-33 (1984)). "The doctrine is meant to protect the state from liability for failing to provide pre-deprivation process in situations where it cannot anticipate the need for such process because the actions complained about are random and unauthorized." Brooks v. George County, Miss., 84 F.3d 157, 165 (5th Cir. 1996).

Woodard contends that the district court erred in applying the Parratt/Hudson doctrine because she does not allege that Andrus' actions are random and unauthorized. She also argues that even assuming *arguendo* that Andrus' actions were random and unauthorized, the district court erred in holding that she had post-deprivation relief available in the form of a writ of mandamus. Woodard asserts that mandamus is not available under the Louisiana Code of Civil Procedure where, as here, injunctive and declaratory relief is sought. Furthermore, she contends that mandamus is an extraordinary remedy that is generally only available to enforce a duty that is strictly personal to the one seeking enforcement. Because the duty Woodard seeks to enforce is one owed to the general public, she argues she can not show that she has a special interest in having the law enforced, and thus, a mandamus would not be available to her. Finally, she argues that requiring mandamus would result in an infinite, circular process of redress because she would be required to file a separate mandamus action for each fee violation and, as a prerequisite to filing a mandamus, she would have

to pay additional unlawful fees that could only be recouped through another mandamus action.

Andrus counters that Woodard's claim must fail because she alleges only that he violated state law, which he contends does not give rise to a due process claim. Andrus also argues that certain fees Woodard complains about are valid fees collected pursuant to state law. Andrus seems to conflate Woodard's equal protection and due process arguments. He asserts that because Woodard claimed in her equal protection argument that he "randomly" treated litigants differently by selectively charging fees, her due process argument falls within the Parratt/Hudson doctrine because his actions were random. He argues that Woodard did not avail herself of available pre- and post-deprivation state remedies. Specifically, Andrus contends that Woodard could have applied to proceed without paying filing fees or she could have filed a writ of mandamus.

A suit against Andrus in his official capacity is in essence a suit against Calcasieu Parish. Monell v. New York City Dept. of Soc. Serv., 436 U.S. 658, 690 n.55 (1978). To establish Calcasieu Parish's liability for a constitutional violation, Woodard must demonstrate that the allegedly constitutionally deficit offense is the policy or custom of the municipality. Id. at 690-91. As the Supreme Court has observed, Congress has recognized that a government's liability is not confined to laws or actions that have been given formal approval through an entity's policymaking channels. Id. Rather, "[a] single decision may create municipal liability if that decision were made by a final policymaker responsible for that activity." Brown v. Bryan County, Oklahoma, 67 F.3d 1174, 1183 (5th Cir. 1995). "[A]t least in those areas in which he, alone, is the final authority or ultimate repository of county power, his official conduct and decisions must necessarily be considered those of one whose edicts or acts may fairly be said to represent official policy for which the county may be held responsible under section 1983." Familias Unidas v. Briscoe, 619 F.2d 391, 404 (5th Cir.

5

1980).

Under Louisiana law, the Clerk of Courts are "ex officio notary public and parish recorder of conveyances, mortgages," and are responsible for "other acts and shall have other duties and powers provided by law." La. Const. art. 5, § 28. Among the duties specifically delegated to district clerks, except for district clerks in Orleans Parish, is the authority to demand and receive certain enumerated fees in civil matters. LA. REV. STAT. 13:841. Section 841also gives district clerks the discretion to demand additional fees in an amount not to exceed ten percent of the enumerated fees. LA. REV. STAT. 13:841(D). Thus, pursuant to Louisiana law, district clerks are the final authority and ultimate repository of the municipality's power on matters related to fees charged in connection to civil litigation. See Monell, 463 U.S. at 694. As the final authority in regard to the activities at issue here, Andrus' actions, as the district clerk for the 14th Judicial District Court, represent the official policy of Calcasieu Parish. Id.

Woodard's assertions, which the court must take as true for the purposes of 12(b)(6) review, establish that Andrus in his capacity as Clerk of Court has "systematically charged and collected" from Woodard, and other similarly situated litigants, fees in excess of, or not authorized by state statute. Woodard's complaint asserts that "[t]hese unlawful fees, and deposits converted to unlawful fees, are commonly charged and collected by the Clerk from all civil litigants." Based on these allegations, it can be inferred that Andrus' act of charging fees in excess of or not authorized by state statute is his custom or policy. As the district clerk, and thereby the ultimate policymaker with regard to fees charged in civil matters, Andrus' actions are the custom or policy of the municipality. Thus, Woodard has established that it is the custom or policy of Calcasieu Parish to charge fees in excess of, or not authorized by state statute.

6

> Where a municipal officer operates pursuant to a local custom or procedure, the Parratt/Hudson doctrine is inapposite: actions in accordance with an "official policy" under Monell can hardly be labeled "random and unauthorized." As this Court noted, where employees are acting in accord with customary procedures, the "random and unauthorized" element required for the application of the Parratt/Hudson doctrine is simply not met.

Brooks, 84 F.3d at 165 (internal citations omitted). For the aforementioned reasons, charging fees in excess of state statute, or charging fees not authorized by state statute is the official policy of Calcasieu parish. As a result, Andrus' actions were not random or unauthorized. Thus, the district court erred in applying the Parratt/Hudson doctrine. Because the Parratt/Hudson doctrine is inapposite, the discussion of the alleged availability of post-deprivation remedies, such as mandamus, is irrelevant. Furthermore, Andrus' argument that Woodard could have taken advantage of a pre-deprivation remedy, namely applying to proceed without paying the filing fees, is irrelevant and meritless because Andrus does not claim that Woodard qualifies to proceed *in forma pauperis*.

In order to prove her due process rights were violated, Woodard must show "that [she] has asserted a recognized liberty or property interest within purview of Fourteenth Amendment and that [she] was intentionally or recklessly deprived of that interest, even temporarily, under color of state law." Doe v. Taylor Indep. Sch. Dist., 15 F.3d 443, 450 (5th Cir. 1995). The district court agreed that Andrus has charged fees in excess of, or not authorized by state statute. However, a violation of a state statute alone is not cognizable under § 1983 because § 1983 is only a remedy for violations of federal statutory and constitutional rights. See Beltran v. City of El Paso, 367 F.3d 299 (5th Cir. 2004); see also Stern v. Tarrant County Hosp. Dist., 778 F.2d 1052, 1059 (5th Cir. 1985) ("a violation of state law is neither a necessary nor a sufficient condition for a finding of a due process violation"); Gerhart v. Hayes, 201 F.3d 646, 650 (5th Cir. 2000) ("The fundamental issue in due

7

process law is not whether state officials violated state law, but whether they provided the plaintiff with constitutional minima").

The due process clause of the 14th Amendment protects citizens from acts of government that "deprive any person of life, liberty or property, without due process of law[.]" U.S. CONST. amend. XIV, § 1; Daniels v. Williams, 474 U.S. 327, 331 (1986). "The hallmark of property . . . is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982). In other words, state-created property rights are protected by due process of law. For example, if under state law a state employee is granted a claim of entitlement to continued employment absent sufficient cause for discharge, that state employee has been granted a property interest that demands the procedural protections of due process. See Connell v. Higginbotham, 403 U.S. 207 (1971). As the district court correctly noted, under Louisiana state law, money is property that cannot be deprived by the state absent due process. State v. Spooner, 520 So.2d 336 (La. 1988). Here, the disputed fees were drawn from a fund that Woodard was required to deposit with the court in advance and have already been confiscated by the Clerk of Court. Woodard's well pleaded allegation establish that she was deprived of a property right without due process of law. Woodard has also shown the requisite state actor participation needed to state a due process claim. For the reasons already stated, Woodard has also established that Andrus' conduct was the custom or practice of the local municipality. Thus, Woodard has established that she was deprived of her property without due process of law through the custom or practice of a state agent acting under the color of state law. Because the Parratt/Hudson doctrine is not applicable and because Woodard has stated a valid due process claim, the district court erred in dismissing Woodard's due process claim under Rule 12(b)(6).

8

IV

The district court correctly granted Andrus' Rule 12(b)(6) motion as to Woodard's equal protection and denial of access to courts claims. She asserts that the clerk's fees are uniform across the state pursuant to state statute, but the litigants in the 14th Judicial District are treated differently because of Andrus' conduct. Because she and other Calcasieu Parish litigants are being treated differently from litigants in other Louisiana parishes, she contends that Andrus violated her equal protection rights. However, Woodard has made no showing that Andrus is selectively enforcing the state statute based upon any impermissible ground. She does not assert that Andrus is distinguishing between different groups. Rolf v. City of San Antonio,77 F.3d 823, 828 (5th Cir. 1996) ("We may conduct an equal protection inquiry only 'if the challenged government action classifies or distinguishes between two or more relevant groups.'"). Therefore, Woodard has not stated an equal protection claim. Woodard also falls short of stating a claim for the denial of her right of access to courts. Woodard does not suggest that Andrus' actions delayed her ability, or deprived her of her right to avail herself of the legal process. For substantially the same reasons stated by the district court, we conclude that Woodard has not stated equal protection or denial of access to courts claims.

V

For the aforementioned reasons, we REVERSE the district court's dismissal of Woodard's due process claim and we AFFIRM the district court's dismissal of Woodard's equal protection and access to courts claims.

REVERSED and REMANDED in part and AFFIRMED in part.

9