FREDERICKA HOMBERG WICKER, Judge.
IsThis consolidated appeal arises from grants of summary judgment in favor of defendants, the Parish of Jefferson and Redflex Traffic Systems. Plaintiffs/Appellants argue that the Automatic Traffic Signal Enforcement ordinance enacted by Jefferson Parish, allowing for citations to be issued to the registered owners of vehicles which enter an “intersection” when faced with a steady-red light, and its accompanying enforcement program, in which Jefferson Parish has partnered with Redflex Traffic Systems, violates the laws of the State of Louisiana and the United States and Louisiana Constitutions. Both Jefferson Parish and Redflex deny these claims. Additionally, Jefferson Parish answers this appeal alleging that the trial court erred in denying its exception of prescription against the claims made in the Falgoust plaintiffs’ suit. For the following reasons, we find the trial court erred in its grants of summary judgment, and reverse those | Judgments. We also find that the trial court did not err in denying Jefferson Parish’s exception of prescription. In light of these findings, we remand this matter for further proceedings.

FACTS

On June 20, 2007, the Jefferson Parish Council adopted the Automated Traffic Signal Enforcement ordinance (the “ATSE”), Jefferson Parish Ordinance, SO-SO? et seq. The ATSE envisions the installation of automated cameras which photograph the rear of vehicles entering highly trafficked intersections in the face of a steady-red traffic signal. Violators are pursued, pursuant to the ATSE statutory scheme. Jefferson Parish contracted with Redflex Traffic Systems, a national concern in the business of installing and maintaining traffic control camera equipment that works in concert with municipal, county (parish) and state governments across the United States, to pursue the owners of vehicles which are photographed violating local, county (parish), or state traffic laws. *379 The enactment and the enforcement of this ordinance are challenged on this appeal.
As enacted, the ATSE authorizes the imposition of a monetary penalty not to exceed $175 on the registered owner of a motor vehicle which “proceeds into an intersection at a system location when the traffic control signal for the motor vehicle’s direction of travel is emitting a steady-red signal.” Jefferson Parish Ordinance Sec. 36-309.
Once a citation is issued to the vehicle owner for a violation, ATSE provides for three tiers of notice and enforcement. Jefferson Parish Ordinance Sec. 36-308. First, ATSE provides that the vehicle owner “is the person responsible for” paying the citation’s fine and that the owner must do so within 30 days.[1] Id. Second, if a vehicle owner fails to pay or contest the “violation notice,” there will be “a second | ¡^notification to the vehicle owner” and an additional “late payment penalty” of at least $25. Id. Under the ATSE, the owner of the camera enforcement equipment, now Redflex is responsible for mailing this first and second notification to the vehicle’s owner by regular U.S. Mail. Id. The third and final tier of the ATSE’s enforcement states:
If after the second notification the Vehicle Owner fails to pay the fine or contest the fine, then the violation will be sent to the Jefferson Parish First and Second Parish Courts, and processed for review by the Jefferson Parish District Attorney’s Office to be handled in a manner consistent with that of a parking violation.

Id.

The ATSE goes on to state:
Notwithstanding the limitations on the amount of the fine imposed under this Article, however, any court which handles any part of the prosecution for a violation under this Article may impose costs upon the person responsible for the fine in addition to the fine and enforcement costs imposed under this Article.
Jefferson Parish Ordinance Sec. 36-309.
As discussed above, to enforce the ATSE, Jefferson Parish partnered with Redflex by a contract executed on March 16, 2007.[2] In this contract, the parties agreed that Redflex would install its camera systems at intersections to photograph potential ATSE violators. The parties further agreed that Redflex would collect “violation data,” store it, and make it accessible for an authorized Parish employee to review. The contract specifically provides that “the decision to issue a citation shall be the sole, unilateral and exclusive decision of the authorized employee.”
According to the contract, once the “authorized employee” of Jefferson Parish determines that a violation of the ATSE has occurred, that employee creates an “authorized violation” on Redflex’s system. Once Redflex receives this | ¿‘authorized violation,” the contract provides that Red-flex must “print and mail a citation....”
The contract further mandates that Jefferson Parish “diligently prosecute citations and the collection of all fines in respect thereof, and [Jefferson Parish] shall be obligated to pay, the compensation [ ... agreed to].”[3] Finally Jefferson Parish, in this contract, warrants and represents *380 “that it has all right, power and authority to execute” the contract and to “perform its obligations” under it.
After executing this contract with Jefferson Parish, Redflex installed its camera systems in various locations in Jefferson Parish. According to the affidavit of Robert Salcido, the director of operations and custodian of records for Redflex, no Redflex camera system was installed, or situated on, Louisiana highways or on Department of Transportation and Development controlled roads or within an incorporated municipality within Jefferson Parish. Redflex’s camera systems worked in conjunction with “electronically-operated traffic-control signalfe].” These camera systems produced images depicting the license plate on the rear of the motor vehicle which indicated that the vehicle was “not operated in compliance with the instructions of the traffic control signal.”
After the installation of the Redflex cameras, and pursuant to the ATSE and Jefferson Parish’s contract with Redflex, citation notices were issued by Redflex and sent by U.S. mail to the registered owners of vehicles. Many of the registered vehicle owners received the notice and either paid it or contested it.

PROCEDURAL HISTORY

This appeal arises, as described below, from the consolidated class-action petitions of the Morales and Falgoust plaintiffs, and the summary judgments |7issued against those plaintiffs and in favor of defendants, Jefferson Parish and Redflex.[4]

The Morales Plaintiffs

The Morales plaintiffs filed their “class action petition for damages and declaratory judgment” on May 15, 2009, against Jefferson Parish and Redflex. This petition was docketed under Twenty-Fourth Judicial District Court case number 673-195. In this petition, plaintiffs sought: to be certified as a class; damages; and a declaratory judgment finding Jefferson Parish’s ATSE to be illegal and unconstitutional under the Louisiana Constitution, to be void ab initio, and to be an ultra vires act.[5] The Morales plaintiffs alleged that Jefferson Parish’s ATSE was unlawful and unconstitutional for several reasons including, but not limited to, that the ATSE violated Louisiana’s Constitution and Code of Civil Procedure because it allowed the civil notice of violation to be served upon putative violators through the U.S. Mail, rather than through the method proscribed in articles 1232 and 1234 of the Louisiana Code of Civil Procedure. The Morales plaintiffs also complained that, if the ATSE was a civil regulatory scheme, it was illegally used to impose criminal court costs. As to Redflex specifically, in addition to the above complaints, the Morales plaintiffs alleged that Redflex’s actions were both an illegal usurpation of Jefferson Parish’s police power and a violation of their right to substantive due process under the Louisiana Constitution. In sum, the Morales plaintiffs challenged the ATSE both as written and as applied.
Defendants each filed an exception of res judicata and a motion for summary judgment seeking to defeat the Morales plaintiffs’ claims. The trial court [ granted *381 these exceptions of res judicata on September 30, 2009, dismissing all but two claims. Those claims related to whether the ATSE violated Louisiana’s spousal immunity privilege or impermissibly attempted to govern civil relationships. On January 4, 2010, the trial court granted summary judgment in favor of defendants on those remaining two claims and dismissed the Morales plaintiffs’ suit. On appeal, this Court reversed that portion of the September 30, 2009 judgment which maintained the exceptions of res judicata and remanded the matter for further proceedings. Morales, et al v. Parish of Jefferson and Redflex Traffic Systems, Inc., 10-273 (La.App. 5 Cir. 11/9/10), 54 So.3d 669, 675. This Court also dismissed the portion of the plaintiffs’ appeal relating to the January 4, 2010, summary judgment, reasoning that it was no longer a final judgment. Id.
On March 3, 2011, the trial court transferred and consolidated the Falgoust plaintiffs’ suit into the Morales suit. Thereafter, the Morales plaintiffs faced a motion for summary judgment by Jefferson Parish.
Jefferson Parish moved for summary judgment against the Morales plaintiffs on May 23, 2012, arguing, inter alia, that the Morales plaintiffs would be unable to prove their claim that the ATSE was illegal under Louisiana’s Constitution and laws. On September 21, 2012, the trial court held a hearing on Jefferson Parish’s motion for summary judgment and exception of prescription. At that hearing, the trial court orally granted Jefferson Parish’s motion for summary judgment, stating:
I believe the ordinance is civil in nature as drafted. That’s why the facial challenges were dismissed_It’s the application of the ordinance that [counsel for the Morales plaintiffs] now objects to.
[[Image here]]
[Counsel for the Morales plaintiffs is] talking about application, and one of the examples he’s used is with regard to the two individuals. They were assessed not only the civil fine for running the red light under the ordinance, but they were also assessed other fees and costs which are the only types of fees and costs that would be assessed in a criminal case.
[[Image here]]
|8The Court does believe that the ordinance, as written, is constitutional. The challenge by the Morales plaintiffs is with regard to application of the ordinance, and the only defendant against that claim is the Parish of Jefferson. The Court believes that the Parish of Jefferson is not the appropriate party with regard to those challenges, and therefore, the motion for summary judgment is granted.
On October 9, 2012, the trial court memorialized its grant of summary judgment in favor of Jefferson Parish in a written judgment.[6] The Morales plaintiffs moved for a devolutive appeal of this judgment; the trial court granted the appeal of the Morales plaintiffs on December 10, 2012.[7]
*382 Redflex never filed a motion for summary judgment against the Morales plaintiffs for their Redflex claims. Therefore as it relates to the Morales plaintiffs, there is no grant of summary judgment in favor of Redflex, and against the claims of the Morales plaintiffs for us to review. Although Redflex did file a motion for summary judgment on October 26, 2012, that motion explicitly and specifically only addressed the Falgoust plaintiffs’ Redflex claims. While we recognize that by the date Redflex filed its summary judgment ■ this matter had become the consolidated case of 691-768 (the Falgoust plaintiffs) c/w 673-195 (the Morales plaintiffs), we find that Redflex’s motion for summary judgment did not act against the Morales plaintiffs. • While the Morales and Fal-goust plaintiffs consolidated their suits, they did not combine them. See Morales v. Parish and Redflex, 11-317 (La.App. 5 Cir. 5/19/2011) (unpublished). Furthermore, the trial court’s December 10, 2012 summary judgment in favor of Redflex did not address itself to the Morales plaintiffs’ claims against Redflex.

|inThe Falgoust Plaintiffs

The Falgoust plaintiffs filed a “class action petition for accounting and declaratory judgment” on August 26, 2010, against Jefferson Parish and Redflex, case number 691-768 in the Twenty-Fourth Judicial District Court. In their petition, the Fal-goust plaintiffs also challenged Jefferson Parish’s enactment and operation of the ATSE. They claimed the ATSE is unlawful because it is preempted by Louisiana state law, because it conflicts with Louisiana law, and because it violates the Louisiana and U.S. Constitutions. The Falgoust plaintiffs petitioned the court for three forms of relief. First, they asked the court to “declare that the ATSE is, and always has been illegal and unenforceable.” Second, they asked the court to order a refund, with interest, to its class members of “all monies paid to Jefferson Parish and/or the Jefferson Parish Photo Enforcement Program Payment Center as a result of Notices of Violation issued pursuant to the invalid ATSE Ordinance.” Third, the Falgoust plaintiffs also asked the court to order Jefferson Parish and Redflex to account for all funds collected.
The trial court certified the Falgoust plaintiffs as a class on December 17, 2010. The trial court defined the Falgoust plaintiffs’ class as follows:
All persons who received a Notice of Violation from the Jefferson Parish Photo Enforcement Program, as provided in Automated Traffic Signal Enforcement (‘ATSE’), set forth as Jefferson Parish Ordinance No. 23083, Article XI, § 63-307 et seq., since its inception until Jefferson Parish suspended its enforcement on or about January 27, 2010, and who complied with the demand of said Violation and paid the ‘fine’ specified therein, with the exception of those persons named as plaintiffs in [Sevin] v. Jefferson Parish, Docket No. 08-802 (U.S.D.C.Ed.La.), and Morales v. Jefferson Parish, Docket No. 673-195 (24th Judicial District Court, La.).
On March 3, 2011, the trial court in the Morales suit granted defendants’ motion to transfer the Falgoust plaintiffs’ suit into its division and consolidate it with the Morales suit. A writ to this Court was sought complaining of this transfer In and consolidation. See Morales v. Parish and Redflex, 11-317 (La.App. 5 Cir. 5/19/2011) (unpublished). That writ was denied by this Court.[8] Id.
*383 Jefferson Parish filed an exception of prescription against the claims of the Fal-goust plaintiffs’ class representatives, Earl J. Falgoust and Kathleen McMenamin, on May 18, 2012. In support of this exception, Jefferson Parish argued that Mr. Fal-goust and Ms. McMenamin’s claims were delictual actions which were prescribed because more than one year had passed between when they knew of their harm and when they filed their suit.
Jefferson Parish moved for summary judgment against the Falgoust plaintiffs on April 27, 2012.[9] In that motion, Jefferson Parish argued the plaintiffs had failed to produce sufficient evidence to establish their claim that Jefferson Parish’s ATSE ordinance is unconstitutional.
The trial court held a hearing on Jefferson Parish’s exception of prescription and motion for summary judgment on September 21, 2012. At the conclusion of this hearing, the trial court denied Jefferson Parish’s exception of prescription, but granted its motion for summary judgment.[10] On October 25, 2012, the trial court issued a written judgment which memorialized this ruling and dismissed the Falgoust plaintiffs’ claims against Jefferson Parish.
Redflex moved for summary judgment against the Falgoust plaintiffs on October 26, 2012.[11] In support of its motion, Red-flex argued that summary judgment in its favor was appropriate because the trial court had already granted | ^summary judgment in favor of its co-defendant, Jefferson Parish, on the same question of whether the Jefferson Parish ATSE ordinance was constitutional. Redflex supplemented its motion for summary judgment on November 7, 2012, asking the trial court to dismiss the Falgoust plaintiffs’ quasi-contract claims for the return of the money generated by the ATSE ordinance. Redflex argued that this dismissal was proper because it had not received any money from Jefferson Parish’s ATSE ordinance.
Redflex’s Motion for Summary Judgment came for hearing on December 5, 2012. At that hearing, counsel for Redflex adopted the argument and record from the September 21, 2012 hearing. In opposition, the Falgoust plaintiffs argued the trial court lacked jurisdiction to decide Redflex’s supplemental motion for summary judgment, when the same issues raised in it were also on appeal to this Court due to the appeal of the prior grant of summary judgment. The trial court, in the interest of allowing this Court to look at the issues of this appeal in their entirety, granted Redflex’s motion for summary judgment “as to the constitution and the legality” of the ATSE. It thereafter dismissed the suit against Redflex without prejudice. The trial court memorialized its ruling in a written judgment issued on December 10, 2012. Plaintiffs moved to appeal this judgment on December 10, 2012.

*384
DISCUSSION

Plaintiffs, in a combined effort to overturn the summary judgments rendered against them, assign two errors. These assigned errors are broken down into five separate issues. Of these, three are seminal to our decision on this appeal.[12] First, plaintiffs argue the trial court erred in dismissing their claim against Jefferson 11sParish because the ATSE violated state law. In support of this assignment, plaintiffs argue the ATSE: is preempted by state law; impermissibly modifies or conflicts with the Louisiana Highway Regulatory Act, La. R.S. 32:1 et seq., (the “LHRA”); and the ATSE violates La. R.S. 15:571.11. Second, plaintiffs argue that the trial court erred in granting summary judgment because the ATSE violates various protections of the United States and Louisiana Constitutions. Third, plaintiffs argue that the trial court erred in granting summary judgment in favor of defendants because it erred in finding that Jefferson Parish was not responsible for the allegedly illegal application of the ATSE and because it did not allow adequate time for discovery to take place. We find only this third assignment to be persuasive.
Jefferson Parish answers this appeal, alleging that the trial court erred in its October 25, 2012 judgment denying its exception of prescription. We find this argument to be without merit.
Assignment One: State law violation
Plaintiffs’ first assignment of error contends that the ATSE is unlawful because the ATSE: is preempted by state law; impermissibly modifies or conflicts with the LHRA; and because the ATSE violates La. R.S. 15:571.11, which addresses the collection of criminal fines and forfeitures. The analysis of each of these arguments depends on a threshold question: Are the citations issued pursuant to the ATSE, civil or criminal matters?
United States District Judge Sarah S. Vance aptly described the analysis this Court must make in deciding whether the ATSE imposes a civil or criminal penalty when she decided a case in federal court that challenged the ATSE.
As both sides correctly recognize, the classification of the ordinance determines which procedures are constitutionally required. See, e.g., United States v. Ward, 448 U.S. 242, 248, 100 5.Ct. 2636, 65 L.Ed.2d|14742 (1980) (listing several constitutional guarantees that apply only in criminal proceedings).
The Supreme Court has explained that determining whether a penalty is civil or criminal in nature is principally a matter of statutory interpretation. Hudson v. United States, 522 U.S. 93, 99, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997). This is often a straightforward inquiry, as many statutes clearly state whether they are intended to be civil or criminal. See, e.g., Ware v. Lafayette City-Parish Consolidated Government, No. 08-218, slip op. at 9, 2009 WL 5876275 (W.D.La. Jan. 6, 2009) (Magistrate Judge’s Report and Recommendation) (finding that Lafayette City-Parish’s traffic camera ordinances were civil in nature because the ordinances contain ‘repeated references to ‘civil citations’ and ‘civil penalties’); NEW ORLEANS CODE OF ORDINANCES § 154-1702 (Automated Traffic Enforcement System) (referring to ‘[ajdministrative adjudications,’ ‘civil penalties],’ and ‘civil liability’). With the ATSE, however, there is no clear-cut answer. As the parties’ briefs illustrate, the ordinance is far from a model of *385 clarity as to what the Jefferson Parish Council intended.
Sevin v. Parish of Jefferson, 621 F.Supp.2d 372, 378-79 (E.D.La.2009).
The issues before Judge Vance did not require her to rule on whether the Jefferson Parish Council intended for the ATSE to be civil or criminal in nature; Judge Vance found that in either case, the ordinance did not facially violate the protections of the United States Constitution. However, because this Court must address the state law issues raised in this appeal, we must decide this question and the constitutionality of the ATSE’s application.[13] After examining the text of the ATSE, we agree with Judge Vance: the ATSE does not clearly state whether it is civil or criminal in nature.
Faced with the ATSE’s ambiguous text, we adopt the two-part test, set forth in State ex rel. Olivieri v. State, 00-0172 (La.2/21/01), 779 So.2d 735, 752-53, in order to analyze the civil versus criminal nature of the ATSE. The first part of this Imtest requires this Court to determine whether the legislature which enacted this law, the Jefferson Parish Council, intended for it to have a “punitive” or a “non-punitive purpose.”[14] See also State v. Trosclair, 11-2302 (La.5/8/12), 89 So.3d 340, 349. If we determine that the Jefferson Parish Council “intended to punish” ATSE violators, then we must find that *386 the ATSE is criminal in nature.[15] If, on this first part of the test, we determine that the Jefferson Parish Council intended to inflict punishment on violators, and that therefore the statute is criminal in nature, this will end our inquiry.[16] On the other hand, if we find this law to have a non-punitive purpose, we must then And the ATSE to be civil in nature. Only if we 11fiflnd the ATSE to be civil in nature do we turn to the second part of the Olivieri test.
If we conclude, as to the first part of the Olivieri test, that the ordinance is civil in nature, we must then conduct the seven factor analysis which is the second part of the Olivieri test.[17] Explaining and delineating this seven-factor analysis, the Louisiana Supreme Court stated:
if the statute has a non-punitive purpose, we are required to determine whether the statutory scheme is so punitive in effect as to ‘transform what was clearly intended as a civil remedy into a criminal penalty.’ [Hudson, 522 U.S. at 99, 118 S.Ct. 488] (quoting Rex Trailer Co. v. United States, 350 U.S. 148, 154, 76 S.Ct. 219, 100 L.Ed. 149 (1956)). The determination of whether an intended civil remedy has a punitive effect is made by the consideration of seven factors:
[1] whether the sanction involves an affirmative disability or restraint, [2] whether it has historically been regarded as a punishment, [3] whether it comes into play only on a finding of scienter, [4] whether its operation will promote the traditional aims of punishment-retribution and deterrence, [5] whether the behavior to which it applies is already a crime, [6] whether an alternative purpose to which it may rationally be connected is assignable for it, and [7] whether it appears excessive in relation to the alternative purpose assigned.... Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963) (footnotes omitted), cited in, [Hudson, 522 U.S. at 99-100, 118 S.Ct. 488],

Id.

Addressing now part one of the Olivieri test, we find sections 36-309 and 36-313 of the ATSE particularly instructive. In section 36-309, the ATSE states that its purpose is to protect the public from the danger of vehicles entering intersections when faced with a steady-red-light signal and the accidents, and the other consequences which result from such acts. Neither that section, nor any other part of the ATSE, states that the ATSE is intended to punish drivers who 117commit this act. In section 36-313, the ATSE describes itself as “an alternative method of detecting and deterring red-light violations.” That section goes on to specifically provide that,
*387 “[n]o fíne imposed [for ATSE violations] will result in notification to the Louisiana Department of Motor Vehicles, to the owner’s insurance company or to the insurance company of any person on whom a fíne is imposed under this article.”[18] We find that the inclusion of this section indicates that the ATSE has a non-punitive purpose because it insures that the putative violators do not suffer collateral consequences through increased insurance rates in the future. Considering these sections, and the ATSE as a whole, we find that the ATSE has a “non-punitive purpose.” Therefore, we find that the ATSE is civil in nature.
Given this conclusion, we must now analyze the ordinance applying the seven factors of the second part of the Olivieri test to determine whether, in spite of the ATSE’s non-punitive purpose, we find the “clearest proof’ that the ATSE is so punitive as to transform what would otherwise be a civil penalty into a criminal penalty. Hudson, 522 U.S. at 100, 118 S.Ct. 488. The Louisiana Supreme Court has further explained:
These [seven] factors, however, are neither exhaustive nor dispositive; they only provide a framework for the analysis. [Smith v. Doe, 538 U.S. 84, 97, 123 S.Ct. 1140, 1149, 155 L.Ed.2d 164 (2003) ]. Moreover, while the [United States] Supreme Court has not explained the relative weight to be afforded each factor, it has recognized that no one factor is determinative as they ‘often point in differing directions’ and has even cautioned that only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty. [Hudson, 522 U.S. at 100-01, 118 S.Ct. 488] (quoting [Kennedy, 372 U.S. at 169, 83 S.Ct. 554]); see also, Kansas v. Hendricks, 521 U.S. 346, 361, 117 S.Ct. 2072, 2082, 138 L.Ed.2d 501 (1997). |18Ever conscious of these instructions, we examine each factor to ascertain its relevance herein.
Trosclair, 89 So.3d at 351 (emphasis in the original).
As to factor one (whether the sanction involves an affirmative disability or restraint), we find that it does not. Here, “we inquire how the effects” of the ATSE “are felt by those subject to it. If the disability or restraint is minor and indirect, its effects are unlikely to be punitive.” Trosclair, 89 So.3d at 351-52 (quoting Smith, 538 U.S. at 99-100, 123 S.Ct. 1140). As in Smith, individuals affected by the challenged statute have no physical restraint or imprisonment imposed on them. Id. While a fine is imposed on the registered owner of a vehicle, the registered owner is not restrained from any future action by this monetary penalty. See Van Harken v. City of Chicago, 906 F.Supp. 1182, 1191 (N.D.Ill.1995) aff'd as modified, 103 F.3d 1346 (7th Cir.1997) (“[A] monetary fine limited to $200 is not an affirmative restraint or disability.”).
As to factor two (whether this sanction has historically been regarded as a punishment), we find that this sanction, a fine, has historically been a punishment of both civil and criminal offenses. Hudson, 522 U.S. at 104, 118 S.Ct. 488 (finding that money penalties have not historically been viewed as punishment and quoting Helvering v. Mitchell, 303 U.S. 391, 400, 58 S.Ct. *388 630, 633, 82 L.Ed. 917 (1938) “the payment of fixed or variable sums of money [is a] sanction which ha[s] been recognized as enforceable by civil proceedings since the original revenue law of 1789.”)- In further analyzing this second factor, we again recognize that the ATSE’s prohibition against reporting violations to insurance companies or the Louisiana Department of Motor Vehicles supports a finding that the fíne imposed by the ATSE is not punishment, but rather a civil regulatory scheme. See also Smith, 538 U.S. at 94, 123 S.Ct. 1140 (“even if the objective of the [challenged law] is consistent |1flwith the purposes of the [state’s] criminal justice system, the [s]tate’s pursuit of [the challenged law] in a regulatory scheme does not make the objective punitive.”).
As to factor three (whether ATSE comes into play only on a finding of scien-ter), we find that it does not. “Scienter” is a “degree of knowledge that makes a person legally responsible for the consequences of his or her act or omission;” it is “the fact of an act’s having been done knowingly,” especially as a “ground for civil damages or criminal punishment.” Black’s Law Dictionary 1373 (8th ed.2004). Violations of the ATSE occur when a vehicle proceeds into an intersection when faced with a steady-red light. Under the ATSE, it is irrelevant whether a driver intends to commit this act.
As to factor four (whether operation of the ATSE will promote the traditional aims of punishment, retribution and deterrence), we find that the ATSE operates to promote the traditional aim of deterrence, but not of punishment and retribution. Furthermore, we recognize that “deterrence” may serve civil as well as criminal goals. State v. Duncan, 98-1730 (La.App. 1 Cir. 6/25/99), 738 So.2d 706, 712. “Any number of governmental programs might deter crime without imposing punishment. ‘To hold that the mere presence of a deterrent purpose renders such sanctions ‘criminal’ ... would severely undermine the Government’s ability to engage in effective regulation.’ ” Smith, 538 U.S. at 102, 123 S.Ct. 1140 (quoting Hudson, 522 U.S. at 105, 118 S.Ct. 488). The fact that the ATSE deters drivers from committing future violations of the ATSE and the LHRA, does not necessitate a finding either that the ATSE is civil or criminal in nature.
As to factor five (whether the behavior to which it applies is already a crime), we find that the behavior it regulates, entering an intersection when faced with a steady-red signal, is already made a crime by Louisiana law. La. R.S. | ¾032:232. However, we recognize that the fact that the same conduct constitutes a criminal offense and a civil violation under state law does not automatically transform the civil penalties into criminal penalties. See Gardner v. City of Columbus, Ohio, 841 F.2d 1272, 1277 (6th Cir.1988) (finding that the imposition of criminal and civil sanctions for the same act does not necessarily transform a civil penalty into a criminal penalty, “particularly when the penalties are in different parts of a statute or are in separate statutes.”).
As to factor six (whether an alternative purpose to which it may rationally be connected is assignable for it), the Louisiana Supreme Court has explained:
This [factor] is generally interpreted as an inquiry into whether the statute advances a legitimate regulatory purpose. ‘The [statute’s] rational connection to a nonpunitive purpose is a ‘[m]ost significant’ factor in our determination that the statute effects are not punitive.’ [Smith, 538 U.S. at 102, 123 S.Ct. 1140] (quoting United States v. Ursery, 518 U.S. 267, 290, 116 S.Ct. 2135, 2148, 135 L.Ed.2d 549 (1996)). Such a connection, *389 however, need only be rational for ‘[a] statute is not deemed punitive simply because it lacks a close or perfect fit with the nonpunitive aims it seeks to advance.’ [Smith, 538 U.S. at 103, 123 S.Ct. 1140].
Trosclair, 89 So.3d at 354. Considering this, we find that an alternative purpose of protecting public safety, by preventing traffic collisions caused by vehicles that run red fights, is assignable to this statute. This alternative purpose is clearly stated in the text of the ATSE in section 36-309.
As to factor seven (whether the ATSE enforcement appears excessive in relation to the alternative purpose assigned), we recognize that:
[While this] factor often also receives great weight, [ ... ] the [U.S.] Supreme Court has cautioned this excessiveness inquiry ‘is not an exercise in determining whether the legislature has made the best choice possible to address the problem it seeks to remedy. The question is whether the regulatory means chosen are reasonable in fight of the nonpunitive objective.’
Trosclair, 89 So.3d at 354 (quoting Smith, 538 U.S. at 105, 123 S.Ct. 1140). We find that the ATSE’s fine and enforcement system does not appear to be excessive in relation to ftythe alternative purpose of preventing future traffic collisions at intersections caused by vehicles running red fights.
After applying these seven factors and weighing the results, we find that the ATSE is not so punitive that it must be considered criminal in nature. The ATSE is civil in nature. In fight of this finding, we now address whether the ATSE violates the Louisiana state law, or the United States or Louisiana Constitutions, either as it is written or as it is applied. State Law: Preemption
First, we consider whether the ATSE is preempted by state law. Plaintiffs argue that by enacting the LHRA, Louisiana has set up a comprehensive highway regulatory scheme that does not allow for Jefferson Parish to enact or enforce the ATSE. For the following reasons, we disagree.
Plaintiffs direct us to La. R.S. 32:21, providing for “uniform application” of the LHRA, to support their preemption argument. However, La. R.S. 32:42 gives “Local parish authorities” — such as Jefferson Parish — the power to “adopt ordinances regulating the matters enumerated in R.S. 32:41” which govern “highways other than state maintained highways” and “public roads within their territorial limits, but outside corporate limits of any municipality therein.”[19] Subject to the restrictions of La. R.S. 32:42, La. R.S. 32:41 allows Jefferson Parish to adopt ordinances that, inter alia, are:
A. (2) Enforcing the provisions of this Chapter, regulations of the department and of the commissioner and local regulations adopted pursuant hereto, by means of police officers or by the use of traffic-control devices approved by the department; [or] ... (14) Creating additional regulations controlling traffic upon nonstate maintained highways within their corporate limits under their general police power so long as such regulations do not modify, or conflict with, the | ^provisions of this Chapter or regulations of the department and the commissioner adopted pursuant hereto.
Examining the record in this matter, the undisputed evidence shows that the ATSE *390 traffic cameras were neither placed on state maintained highways nor within the corporate limits of any municipality within Jefferson Parish. Therefore, the ATSE enforcement scheme may be justified under either La. R.S. 32:41(2) or (14). Because we find the ATSE is permitted under La. R.S. 32:41(14), we do not address whether the ATSE is also permitted by La. R.S. 32:41(2).
La. R.S. 32:41(14) permits Jefferson Parish to enact and enforce the ATSE outside the corporate limits of any municipality within Jefferson Parish, so long as the ATSE does not “modify, or conflict with” the LHRA or the “regulations of the department and the commissioner adopted pursuant” to it. Accordingly, we find that the LHRA does not render the ATSE invalidated through preemption. Therefore, the question of whether the LHRA prohibits the ATSE must be determined by whether the ATSE conflicts with or modifies the LHRA.

State Law: LHRA Conflict or Modification

Plaintiffs argue that the ATSE conflicts with the LHRA because: (1) the ATSE punishes an act which is allowed by the LHRA; (2) under the ATSE, the registered owner of a vehicle is liable if his or her car is photographed running a red light, but under the LHRA, La. R.S. 32:232, it is the driver of the car who is prohibited from running a red light; (3) the ATSE decriminalizes running a red light; and because, (4) the ATSE does not meet the methods proscribed in Louisiana law for the enforcement of traffic tickets.
In their first argument, plaintiffs contend that the ATSE conflicts with the LHRA because the ATSE punishes drivers in a situation where the LHRA does not punish drivers in the same situation. Compare Jefferson Parish Ordinance, Section 12.^36 — 309 with La. R.S. 32:232(3)(a). Specifically, plaintiffs argue that La. R.S. 32:232(3)(a) permits a vehicle, which has legally passed through either a stop line or a crosswalk before encountering a red light at the intersection of two perpendicular streets, to pass through the intersection on a steady-red signal, whereas the same motorist' would be prohibited from passing through this same intersection by the ATSE.[20]
*391 Plaintiffs illustrate their proposed situational conflict by a hypothetical. Plaintiffs ask this Court to first imagine a vehicle traveling towards an intersection which is controlled by a signal light which is displaying a yellow signal. Plaintiffs ask this Court to then imagine that after this vehicle has passed a stop line, a crosswalk, or both, on the near-side of the intersection, but before this vehicle has entered the area shared by the intersecting roads, bounded by the lateral lines of the intersecting roads, the signal light changes and begins to display a steady-red signal.[21] Plaintiffs argue that, in this hypothetical situation, the LHRA and the ATSE conflict because they demand different actions from the vehicle. Plaintiffs 1 ¡.¿propose that under the LHRA, the vehicle may proceed into the intersection, but, that under the ATSE, the vehicle must stop before proceeding into the intersection. Because we find that appellants misconstrue the LHRA, we disagree.
Under no circumstances may a vehicle enter the area within the lateral lines of the intersecting roads when it is faced with a steady-red light signal. We reach this conclusion after comparing the provisions of both the LHRA and the ATSE which govern this hypothetical situation.
The LHRA governs the plaintiffs’ hypothetical situation in the following text:
Whenever traffic is controlled by traffic-control signals exhibiting different colored lights, or colored lighted arrows, successively one at a time or in combination, only the colors green, red, and yellow shall be used, except for special pedestrian signals carrying a word legend, and said lights shall indicate and apply to drivers of vehicles and pedestrians as follows:
(1) GREEN indication:
(a) Vehicular traffic facing a circular green signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. But vehicular traffic, including vehicles turning right or left, shall stop and yield the right-of-way to other vehicles and to pedestrians lawfully within the intersection or an adjacent crosswalk at the time such signal is exhibited.
(b) Vehicular traffic facing a green arrow signal, shown alone or in combination with another indication, may cautiously enter the intersection only to make the movement indicated by such arrow, or such other movement as is permitted by other indications shown at the same time. Such vehicular traffic shall stop and yield the right-of-way to pedestrians lawfully within an adjacent crosswalk and to other traffic lawfully using the intersection.
(c) Unless otherwise directed by a pedestrian control signal as provided in R.S. 32:233, pedestrians facing any green signal, except when the sole green signal is a turn arrow, may proceed across the roadway within any marked or unmarked crosswalk.
(2) Steady YELLOW indication:
(a) Vehicular traffic facing a steady yellow signal alone is thereby warned that the related green signal is being terminated |gBor that a red signal will be exhibited immediately thereafter and such vehicular traffic *392 shall not enter the intersection when the red signal is exhibited, (b) Unless otherwise directed by a pedestrian control signal as provided in R.S. 32:233 a pedestrian facing a steady yellow signal is thereby advised that there is insufficient time to cross the roadway before a red signal is exhibited and no pedestrian shall then start to cross the roadway.
(3) Steady RED indication:
(a) Vehicular traffic facing a steady circular red signal alone shall stop at a clearly marked stop line, or if none, then before entering the crosswalk on the near side of the intersection, or if none, then before entering the intersection, and shall remain standing until an indication to proceed is shown except as provided in Subparagraph (c) of this Paragraph.
(b) Vehicular traffic facing a steady red arrow signal shall not enter the intersection to make the movement indicated by the arrow and, unless entering the intersection to make a movement permitted by another signal, shall stop at a clearly marked stop line, or if none, then before entering the crosswalk on the near side of the intersection, or if none, then before entering the intersection, and shall remain standing until an indication permitting the movement indicated by such red arrow is shown except as provided in Subparagraph (c) of this Paragraph.
(c) Except when a sign prohibits a turn, vehicular traffic facing any steady red signal may cautiously enter the intersection to turn right, or to turn left from a one-way street into a one-way street, or to U-turn at a signalized U-turn after stopping as required by Subparagraph (a) or Sub-paragraph (b) of this Paragraph. Such vehicular traffic shall yield the right-of-way to pedestrians lawfully within an adjacent crosswalk and to other traffic lawfully using the intersection.
La. R.S. 32:232 (emphasis added).
In comparison, the ATSE, governing the same hypothetical, imposes liability as follows:
The registered owner of a motor vehicle which proceeds into an intersection at a system location when the traffic control signal for the motor vehicle’s direction of travel is emitting a steady red signal shall be liable for a ... penalty....
Jefferson Parish Ordinance, Section 36-309.
|ZfiPlaintiffs urge this Court to apply a definition of “intersection” to the above quoted section of the ATSE, which excludes “crosswalks” from the area considered to be part of the “intersection.” This definition, in relevant part, states:
Intersection means [ ] a junction where one (1) roadway crosses another; the actual area common to crossing roadways embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral lines of the roadways of two (2) streets which join one another, usually at right angles. Crosswalks do not comprise part of the intersection.
Jefferson Parish Ordinances, Sec. 29-0.1. (Definitions).[22]
We reach our conclusion that the LHRA in all instances prohibits vehicles from passing a stop line or entering a crosswalk or the area bounded by the lateral lines of *393 the intersecting roads, when facing a steady-red light signal, after considering in conjunction, both the LHRA’s provision governing the behavior of a vehicle facing a yellow light signal, and its provision governing the behavior of a vehicle facing a red light signal. La. R.S. 32:232(2) and (3). A driver of a vehicle facing a yellow light signal is warned that “a red signal will be exhibited immediately thereafter and such” a vehicle is prohibited from entering “the intersection when the red signal is exhibited.” La. R.S. 32:232(2)(a). A driver of a vehicle who thereafter faces a red light signal is further also required to “stop at a clearly marked stop line, or if none, then before entering the crosswalk on the near side of the intersection, or if none, then before entering the intersection, and shall remain standing until an indication to proceed is shown.... ” La. R.S. 32:232(3)(a). This requirement — -that a vehicle stop, at a stop line or crosswalk, on the near side of an intersection the vehicle is approaching — in no way negates the vehicle’s responsibility to stop before entering the actual area in which two vehicles may collide if the vehicle is faced with a red light signal.
| g7In comparison, the ATSE creates liability when a vehicle proceeds into an intersection when the vehicle is faced with a steady-red light signal. This creates liability for the exact same behavior that La. R.S. 32:232(2)(a) prohibits.
While the LHRA, in La. R.S. 32:232, and the ATSE do not conflict, they also do not regulate all of the same behavior. The ATSE does not create liability when a vehicle that is approaching an intersection and is faced with a steady-red light signal proceeds past a stop line, crosswalk, or both, but does not enter the area shared by the intersecting roads. In contrast, the LHRA, in La. R.S. 32:232(3)(a), prohibits this failure to stop. After considering this difference, we find that the difference is permissible under La. R.S. 32:41(14), because it does not modify or change the prohibitions of the LHRA or the regulations of the department and the commissioner adopted pursuant to it.
In their second and third arguments seeking to prove that the ATSE modifies or changes the LHRA, plaintiffs contend both that it is impermissible that the ATSE holds the registered owner of a violating vehicle liable rather than the person who drives the vehicle, and that the ATSE decriminalizes the act of running a red light. These arguments also fail. These arguments fail to recognize that the Jefferson Parish ATSE is a separate and distinct law from the state LHRA. There is no evidence that the driver of a car may not still be stopped and criminally cited, pursuant to the LHRA, for running a red light or for any other act prohibited by the LHRA. Additionally, the civil citations issued pursuant to the ATSE in no way prohibit officers from issuing criminal citations pursuant to the LHRA.
In their fourth and final argument, plaintiffs contend that citations issued pursuant to the ATSE do not conform to the requirements of La. R.S. 32:398.2, and that therefore, those ATSE citations are illegal both based on their failure to comply with La. R.S. 32:398.2 and because they modify or change the LHRA. We |2Ragain disagree. La. R.S. 32:398.2 sets ' requirements for traffic citations issued for alleged violations of “the motor vehicle laws of this state or of any traffic ordinance of any city or town.” Because ATSE citations were issued for violations of a civil Parish ordinance, La. R.S. 32:398.2 simply does not apply.
Because we reject plaintiffs’ four arguments as to why the ATSE modifies or conflicts with the LHRA, we accordingly *394 find this aspect of this assignment of error to be without merit.

State Law: Violation

Plaintiffs also argue the ATSE is invalid because it invalidates state law in several ways. In one of these arguments, plaintiffs allege that the ATSE, as enforced, violates La. R.S. 15:571. That statute states, in relevant part that:
A. (l)(a) All fines and forfeitures, ... conviction fees in criminal cases, and prosecutions for violations of state law or parish ordinances, upon collection by the sheriff or executive officer of the court, shall be paid into the treasury of the parish in which the court is situated and deposited in a special ‘Criminal Court Fund’ account, which, on motion by the district attorney and approval order of the district judge, may be used or paid out [ ... in certain prescribed ways].
La. R.S. 15:571.11.
Defendants argue that this statute is not applicable because it is a law of criminal procedure, and the ATSE does not create a criminal process, but rather, sets up a civil process. We agree. Additionally, we find La. R.S. 15:571.11 is not violated because there is no evidence in this record that any of the fines paid pursuant to the ATSE are collected by the sheriff or an executive officer of a court. Therefore, this argument is without merit.
Assignment Two: Constitutionality
Plaintiffs argue the ATSE is unconstitutional both as written and as applied because it deprives individuals of their rights to due process. Plaintiffs’ rights to | agdue process are guaranteed by both the U.S. and Louisiana Constitutions. U.S. Const. Amend. 14; La. Const. Art. 1 § 2. The fundamental requirement of procedural due process is notice and the opportunity to be heard at a meaningful time and in a meaningful manner. Hamilton v. Royal International Petroleum Corporation, 05-846 (La.2/22/06), 934 So.2d 25, 32. Plaintiffs claim that their right to procedural due process has been violated because they have been deprived of their rights to: confront the witnesses against them; to be convicted by “proof beyond a reasonable doubt” without the use of presumption; to remain silent; and to be tried under a statute which is not void for vagueness. Plaintiffs also attack the ATSE as a violation of substantive due process. We address each of these arguments in turn.
First, we find that the ATSE does not deprive plaintiffs of their constitutional right to confront witnesses or be convicted by “proof beyond a reasonable doubt” because those two protections apply only in the context of criminal proceedings. See U.S. Const. amend. VI (right to confront witnesses in criminal prosecutions); Gutenkauf v. City of Tempe, CV-10-02129PHX-FJM, 2011 WL 1672065 (D.Ariz. May 4, 2011) (“The Sixth Amendment only applies in the criminal context.”); La.Rev. Stat. Ann. § 49:964(G)(6) (Agency decisions must be supported by a preponderance of the evidence).
Second, with regard to plaintiffs’ right to remain silent, we recognize that the Fifth Amendment “protects a person only against being incriminated by his own compelled testimonial communications.” State v. Charles, 09-0433 (La.9/4/09), 16 So.3d 1166, 1167 (quoting Fisher v. United States, 425 U.S. 391, 409, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976)). Here, we find no evidence in the record that plaintiffs were compelled to give testimonial statements that would Isnincriminate them in a current or future criminal prosecution. Accordingly, we find plaintiffs’ Fifth Amendment rights against self-incrimination were not violated.
*395 Third, we also reject plaintiffs’ argument that the ATSE is unconstitutionally vague. Plaintiffs argue the ATSE is unconstitutionally vague because it does not specifically define what it prohibits, by its text imposing a liability on any given vehicle which “proceeds into an intersection” when faced with a traffic light emitting a steady-red signal. Plaintiffs argue that this proceeding into an “intersection” is an undefined act and therefore this statute is unconstitutionally vague. The standard for judging this claim by plaintiffs was explained by the Louisiana Supreme Court in State v. Hair as follows:
A statute is unconstitutionally vague if an ordinary person of reasonable intelligence is not capable of discerning its meaning and conforming his conduct thereto. This occurs where a statute either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. In such instances, the statute violates due process of law. Due process requires only that the language of a statute have generally accepted meaning so that a person of ordinary and reasonable intelligence is capable of discerning its proscriptions and is given fair notice of the conduct which is forbidden by its terms..
00-2694 (La.5/15/01), 784 So.2d 1269, 1274 (internal citations omitted).
Applying this standard, we find that the ATSE is not unconstitutionally vague. The ATSE’s restriction does not impose liability on a vehicle which, when facing a steady-red light, passes a stop line, a crosswalk, or both, on the near side of an intersection. It imposes a particular restriction upon vehicles traveling in Jefferson Parish—namely, it prohibits a vehicle from entering the area bounded by the lateral lines of intersecting roads when faced with a steady-red light.
Finally, plaintiffs’ argument that the ATSE deprives them of substantive due process under the U.S. Constitution is also without merit. “Government action comports with substantive due process if the action is rationally related to a I si legitimate government interest.” Standard Materials, Inc. v. City of Slidell, 96-0684 (La.App. 1 Cir. 9/23/97), 700 So.2d 975, 988. The government’s fines by citations under the ATSE, in this instance, are rationally related to Jefferson Parish’s legitimate goal of protecting the public welfare by preventing traffic accidents at intersections; there is no violation of plaintiffs’ right to substantive due process.
Assignment Three: Parish Liability and Discovery Time
Despite the above findings, we reverse the trial courts’ grants of summary judgment in favor of Jefferson Parish and Redflex. The trial court found that, with regard to plaintiffs’ complaints of the manner in which the ATSE was enforced or applied, Jefferson Parish was not an appropriate party defendant. We find that a genuine issue of material fact exists as to whether Jefferson Parish was, as a matter of fact or of law, the proper party against whom these plaintiffs could assert their remaining viable claims. The trial court erred in granting summary judgment in favor of Jefferson Parish. We further find that plaintiffs were not afforded an adequate opportunity for discovery against both Jefferson Parish and Redflex on this particular issue.
Although we do not now opine upon the correct resolution of this issue of fact, in light of our finding that the ATSE is a civil enforcement scheme, there are questions as to, among other things, whether the procedure to give alleged violators notices *396 of the proceedings against them in the First and Second Parish Courts for the Parish of Jefferson was legally sufficient; whether the proceedings in the First and Second Parish Courts for the Parish of Jefferson complied with the applicable rules of jurisdiction, civil procedure, and procedural due process; whether the District Attorney had the power, in his official capacity, to prosecute |sacitations issued pursuant to the ATSE;[23] and whether the imposition of criminal fees in a civil proceeding was permissible.
We conclude that there is a genuine issue of material fact as to whether Jefferson Parish may be liable for any of these potential failings. Jefferson Parish enacted the law. Further, there is no evidence in this record which would enable us to discern whether Jefferson Parish itself designed the ATSE enforcement process or whether Jefferson Parish simply enacted the ATSE, and then left it to independent entities, such as the Sheriff, Clerk of Court, District Attorney and the First and Second Jefferson Parish Courts, to set up the enforcement methods. Without such evidence, the trial court erred in finding that Jefferson Parish, which enacted the ATSE ordinance, was not a proper party defendant.[24]
As to Redflex, we find the trial court erred in issuing summary judgment in its favor on December 10, 2012. We find that there is a material issue of fact as to what, if anything, Redflex did to set up the procedures which are now called into question. Furthermore, to the extent that plaintiffs petitioned Redflex for an accounting of funds which were collected pursuant to the ATSE, we find that the trial court also erred in granting summary judgment in favor of Redflex. There are genuine questions of material fact as to how much money was collected diming the lasperiod in which the ATSE was enforced.[25] Furthermore, there is an unresolved genuine question of material fact as to how much money, if any, Redflex would be due under its contract with Jefferson Parish, if the court, in further proceedings, finds the ATSE illegal or unconstitutional as applied.
Additionally, as to both Jefferson Parish and Redflex, we find merit in plaintiffs’ argument that summary judgment was improper because they had not been given sufficient time for discovery. Plain *397 tiffs were not afforded an adequate opportunity to respond after defendants alleged that the Sheriff of the Parish of Jefferson, not the defendants, possessed and controlled the escrow account containing all of the ATSE fees and fines at issue.[26]
For these reasons, we reverse the summary judgments issued in favor of defendants and remand this matter for additional discovery and further proceedings consistent with this opinion.

WRIT NUMBER 13-C-500:

JEFFERSON PARISH’S EXCEPTION OF PRESCRIPTION

On May 18, 2012, Jefferson Parish filed an exception of prescription against the claims of the Falgoust plaintiffs’ class representatives, Earl J. Falgoust and Kathleen McMenamin, arguing that Mr. Falgoust and Ms. McMenamin alleged del-ictual claims that had prescribed. Jefferson Parish pointed out that while the Fal-goust plaintiffs’ petition alleged that Mr. Falgoust paid his fine arising from his ATSE violation notice on June 12, 2008, and that Ms. McMenamin did the same on or after May 14, 2009, their petition was not filed until August 26, 2010. | ^Jefferson Parish argued that, given the Falgoust plaintiffs’ own allegations, the one-year prescriptive period for their del-ictual action claims had run. See La. C.C. art. 3492.
The trial court heard Jefferson Parish’s exception of prescription and thereafter denied it. The trial court issued a written judgment confirming, inter alia, its denial of Jefferson Parish’s exception on October 25, 2012. On June 14, 2013, Jefferson Parish filed a supervisory writ with this Court seeking supervisory review of this ruling.[27] On December 18, 2013, in the interest of judicial efficiency, this Court consolidated Jefferson Parish’s writ application into this appeal.
After reviewing the record, the law, and in light of our findings above, we find that the trial court did not err in denying Jefferson Parish’s exception of prescription. The Falgoust plaintiffs have not asserted a delictual action which would be subject to a one-year prescriptive period. Rather, they seek a declaratory judgment declaring the ATSE illegal and the return of the money they paid as a result of the enactment and enforcement of the ATSE. Actions such as those by the Fal-goust plaintiffs here, seeking a declaratory judgment, are imprescriptible, and actions seeking return 'of a thing not due are subject to a prescriptive period of ten years. See Louisiana State Med. Soc. v. Louisiana State Bd. of Nursing, 493 So.2d 581, 584 (La.1986) (“prescription or laches cannot be asserted against a suit to declare a ruling or ordinance invalid or unconstitutional”); and La. C.C. art. 3499 (providing a ten-year liberative prescriptive period for personal actions); Julien v. Wayne, 415 So.2d 540, 542 (La.App. 1 Cir. 5/25/1982) (“A claim for restitution of payment not due is based on the doctrine of quasi-contract, which [.^prescribes only by prescription of ten years.”). Accordingly, we find the trial court did not err in denying Jefferson Parish’s exception of prescription.

*398
CONCLUSION

For the foregoing reasons, we hereby reverse the grants of summary judgment rendered in favor of Jefferson Parish on October 9, 2012 and October 25, 2012, as well as the grant of summary judgment rendered in favor of Redflex on December 10, 2012. We also deny Jefferson Parish’s application for supervisory relief from the denial of its exception of prescription. We remand this matter to the trial court for further proceedings consistent with this opinion.[28]

WRIT DENIED; SUMMARY JUDGMENTS REVERSED; REMANDED.

. It is unclear from the ATSE when this 30-day response period begins to run.

. This agreement was ratified by the Jefferson Parish Council on January 24, 2007.

.Pursuant to the compensation agreement, the marginal amount that Jefferson Parish is entitled to from the paid citations increases with the number of citations that it issues and that are paid.

. As will be discussed later, the trial court granted summary judgment in favor of Jefferson Parish and Redflex against the Falgoust plaintiffs. The trial court also granted summary judgment in favor of Jefferson Parish and against the Morales plaintiffs. Redflex did not pursue summary judgment against the Morales plaintiffs.

. The Morales plaintiffs' petition does not challenge the constitutionality of the ATSE, as written or as applied, under the U.S. Constitution.

. The trial court also denied, as moot, a motion for class certification which had been filed on behalf of the Morales plaintiffs.

. The Morales plaintiffs initially erred by moving for an appeal from the trial court's October 25, 2012 judgment. The Morales plaintiffs later filed a supplemental motion for appeal in which they stated that the October 25, 2012 date in the original motion was a typographical error and that it was the trial court's October 9, 2012 judgment that they wished to appeal.

. While the trial court's March 3, 2011 suit consolidated the plaintiffs’ actions into one matter, it did not combine their suits. See Id. (citing Rides v. Kentwood Oil Co., Inc., 09- *383 0677 (La.App. 1 Cir. 2/23/10), 38 So.3d 363, 366, writ denied, 10-1733 (La.10/15/10), 45 So.3d 1112).

. Although the case was consolidated at this time, Jefferson Parish directed its April 27, 2012 motion for summary judgment only against the Falgoust plaintiffs.

. Also at that hearing, the trial court denied defendants’ exception of no cause of action, and denied the plaintiffs’ motion for summary judgment.

.This motion was explicitly not against the Morales plaintiffs. Furthermore, in that motion, although Redflex alleges that the Morales plaintiffs "dismissed Redflex, with prejudice, prior to the September 21, 2012 hearing,” we can find no evidence of this dismissal in the record.

. Given our discussion of these three issues, we need not decide the remaining issues raised by the plaintiffs in their assignments of error.

. In two previous writ dispositions, this Court treated challenges to the ATSE violations as criminal matters. However, this Court took those two previous writs as they were presented to this Court, without deciding on the correctness of whether those matters were properly criminal or civil. State of Louisiana v. Anderson B. Cosby, IV, 08-KH-627 (La.App. 5 Cir. 8/11/08) (unpublished writ) (reversing relator's "misdemeanor conviction for running a red light.”); Parish of Jefferson v. Timothy G. Morales, 08-KH-1173 (La.App. 5 Cir. 10/30/08) (unpublished writ) (finding this Court did not have jurisdiction to review the constitutionality of the First Parish Court’s finding that relator was "guilty” of violating the ATSE).

. As Judge Vance discussed in Sevin, 621 F.Supp.2d 372, there is significant ambiguity as to what courts may look to in interpreting whether a law, such as the ATSE, on its face, is civil or criminal:
In addition, the evidence points in different directions depending upon which sources are considered. The Supreme Court has not squarely decided whether sources other than the statutory text itself-such as state court decisions and state executive branch practices-may be taken into account when the Court determines whether a statute is civil or criminal in nature. Compare [Hudson, 522 U.S. at 104, 118 S.Ct. 488] (*[W]e look only to 'the statute on its face’ to determine whether a penalty is criminal in nature.’) (quoting [Kennedy v. Mendoza-Martinez, 372 U.S. 144, 169, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963)]), and [Smith v. Doe, 538 U.S. 84, 106, 123 S.Ct. 1140, 1154, 155 L.Ed.2d 164 (2003)] (Thomas, J., concurring) (‘[T]he determination whether a scheme is criminal or civil must be limited to the analysis of the obligations actually created by statute.’), with Seling v. Young, 531 U.S. 250, 266, 121 S.Ct. 727, 148 L.Ed.2d 734 (2001) ('This case gives us no occasion to consider ... the extent to which a court may look to actual conditions of confinement and implementation of the statute to determine in the first instance whether a confinement scheme is civil in nature.'),[Smith, 538 U.S. at 99, 123 S.Ct. 1140] (considering '[t]he fact that Alaska posts [sex offender] information on the Internet,' despite the lack of any reference to internet notification in the statute), and [Seling, 531 U.S. at 267-70, 121 S.Ct. 727] (Scalia, J., concurring) (arguing that courts can look beyond the face of the statute in limited circumstances). This methodological debate has more than theoretical implications for this case. If this Court were to consider nonstatutory sources, the case for classifying the ATSE as a criminal ordinance would be greatly strengthened. See, e.g., Mem. in Support of Pis.’ Motion for Summary Judgment, R. Doc. 101-27 at 8-12; Broussard Aff., R. Doc. 132.

Id.

. Smith, 538 U.S. at 92-93, 123 S.Ct. 1140 ("A conclusion that the legislature intended to punish would satisfy an ex post facto challenge without further inquiry into its effects, so considerable deference must be accorded to the intent as the legislature has stated it.”).

. See Smith, 538 U.S. at 85, 123 S.Ct. 1140 ("If the intention was to impose punishment, that ends the inquiry. If, however, the intention was to enact a regulatory scheme that is civil and nonpunitive, the Court must further examine whether the statutory scheme is so punitive either in purpose or effect as to negate the State's intention to deem it civil.”).

.Before these factors were adopted in Louisiana, they were set out in by the U.S. Supreme Court in Kennedy, 372 U.S. 144, 83 S.Ct. 554. Since Kennedy, the U.S. Supreme Court continues to endorse and use these factors, in cases such as Smith, 538 U.S. 84, 123 S.Ct. 1140, despite others changes in the Court’s prescription for this analysis between United States v. Halper, 490 U.S. 435, 448-449, 109 S.Ct. 1892, 1901-1902, 104 L.Ed.2d 487 and Hudson, 522 U.S. at 99, 118 S.Ct. 488.

. ATSE section 36-313 goes on to provide: "... An owner who fails to pay the fine and/or enforcement costs imposed under this article or to timely contest liability for said fines and/or costs shall be considered to have admitted liability for the full amount of the fines and costs stated in the notice of violation mailed to the person and the matter will be turned over to the district attorney's office for further prosecution and collection."

. We also recognize that La. R.S. 32:21, allows "local authorities” to "adopt local traffic regulations in accordance with the provisions of R.S. 32:41, 32:42.”

. La. R.S. 32:l(26)(a) defines “intersection'1 as “The area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles, or the area within which vehicles traveling upon different highways joining at any other angle may come in conflict.” When the ATSE was enacted in 2007, this definition of “intersection” was the governing state law. However, 2010 La. Act No. 275, amended this definition, effective June 17, 2010, to include La. R.S. 32:l(26)(d)(ii), a provision including the area beyond a designated stop line or yield line, or within the area of a cross work, within the definition of what constitutes an intersection.
If we applied the definition of intersection from Chapter 29 of Jefferson Parish Ordinances, which does not include the crosswalk as a part of the intersection, there would be a difference in the definition of the term "intersection” between the state law and the parish ordinance. This however would be a difference without a consequence because it would create no conflict or modification of the LHRA. A vehicle is not permitted under the LHRA, when it is approaching a steady red traffic signal governing an intersection, to proceed past a stop line, crosswalk, or the area shared by the lateral lines of the intersecting roads. La. R.S. 32:232. While the ATSE does not prohibit a vehicle from proceeding past a stop line or into a crosswalk in the same situation, the ATSE does prohibit the vehicle in the same situation from entering the area bounded by the lateral lines of the intersecting roads. Despite the fact that the ATSE enforces only part of the prohibition of La. R.S. 32:232, the ATSE does not modify or conflict with the LHRA.

. To reach this conclusion, plaintiffs apply the definition of "intersection” found in Chapter 29 of the Jefferson Parish Ordinances to the ATSE. Although we do not find this argument to be correct for all purposes, we assume it is correct in this analysis for our current purpose of analyzing plaintiffs’ argument.

. By its plain terms, this definition of intersection applies only to Chapter 29 of the Jefferson Parish Ordinances, not Chapter 36, the chapter which contained the ATSE.

.First, we find that the ATSE, as written, does not constitute a violation of the U.S. or Louisiana Constitutions on its face. While it is questionable whether Jefferson Parish can force a District Attorney to be responsible for prosecuting civil ordinance violations, that is not what the text of the ATSE proscribes. The ATSE simply states that the violations will be turned over to the District Attorney. Under the ATSE, as written, it appears the District Attorney could choose to do nothing with these ATSE violations.- Second, we do not now opine as to whether the ATSE, as applied, through its use of the District Attorney, violated either the U.S. or Louisiana Constitutions. The trial court must first allow additional proceedings as to whether Jefferson Parish was the proper party defendant.

. In Woodard v. Andrus, 419 F.3d 348, 352 (5th Cir.2005), the U.S. Fifth Circuit Court of Appeals was faced with the question of whether a parish clerk of court set parish policy, such that the parish was liable for the clerk’s actions under a 42 U.S.C. § 1983 action. While we are not faced with a “1983 action” in this appeal, we recognize that Woodard may be instructive in further proceedings to determine whether Jefferson Parish delegated final decision making authority to other entities, such that Jefferson Parish must be liable for any potential failings of those other entities.

. This is because, inter alia, there is not sufficient evidence in this record to determine the number of violation citations issued pursuant to the ATSE, and the amount of money that was paid in response to those citations.

. In light of these findings that the trial courts’ grants of summary judgment in favor of defendants were improper for the previously mentioned reasons, we need not now address plaintiffs’ claim that summary judgment in favor of Redflex was improper because they stated a claim for a declaratory judgment action against Redflex.

. Jefferson Parish’s supervisory writ application became docketed in this Court as matter number 13-C-0500.

. These are the dales that the written judgments were rendered.